UNITED STATES v. KETTENBACH et al. (three cases).

(Circuit Court of Appeals, Ninth Circuit.   October 21, 1913.)

Nos. 2,209–2,211.

1. APPEAL AND ERROR (§ 171*)—REVIEW—THEORY OF CAUSE.

A decree will not be reversed on appeal on a theory on which the case was not tried below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1053–1063, 1066, 1067, 1161–1165; Dec. Dig. § 171.*]

2. PUBLIC LANDS (§ 120*)—SALE—TIMBER AND STONE ACT—ALIENATION - FRAUD.

The Timber and Stone Act (Act June 3, 1878, c. 151, 20 Stat. 89, as amended by Act Aug. 4, 1892, c. 375, 27 Stat. 348 [U. S. Comp. St. 1901 p. 1545]) does not limit the dominion which a purchaser has over land after its purchase from the government or restrict his power of alienation, but merely denounces a prior agreement to enter and purchase the land for a third person, so that the fraud for which the purchase may be annulled at the suit of the government, with reference to alienation, must be an agreement to sell, entered into between the entryman and another before the making of the original application to purchase.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. § 120.*]

3. PUBLIC LANDS (§ 38*) — PURCHASE — TIMBER AND STONE ACT — FRAUD — FINAL PROOF.

Where an applicant to purchase public land under the Timber and Stone Act (Act June 3, 1878, c. 151, 20 Stat. 89, as amended by Act Aug. 4, 1892, c. 375, 27 Stat. 348 [U. S. Comp. St. 1901, p. 1545]) has sworn to the bona fides of his application in his preliminary statement, and he has at the time no contract or agreement to convey the title to a third person, he is not required to again swear to such facts on making final proof.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 82; Dec. Dig. § 38.*]

4. PUBLIC LANDS (§ 120*)—PURCHASE—TIMBER AND STONE ACT—FRAUD—EVIDENCE.

In suits by the United States to set aside certain patents issued under the Timber and Stone Act (Act June 3, 1878, c. 151, 20 Stat. 89, as amended by Act Aug. 4, 1892, c. 375, 27 Stat. 348 [U. S. Comp. St. 1901, p. 1545]), for alleged fraud of the entrymen in conspiring to purchase the land for sale to others, evidence relating to acts of the entrymen and of those alleged to have contracted to purchase the land after the making of the original applications by the entrymen was admissible only as tending to establish the fraudulent purpose of the entrymen with respect to the land in controversy at the time of the original applications.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. § 120.*]

5. PUBLIC LANDS (§ 120*)—SALE—TIMBER AND STONE ACT—FRAUD—EVIDENCE

In suits to set aside certain patents to land purchased under the Timber and Stone Act (Act June 3, 1878, c. 151, 20 Stat. 89, as amended by Act Aug. 4, 1892, c. 375, 27 Stat. 348 [U. S. Comp. St. 1901, p. 1545]), evidence held to require a finding, as to part of the land, that it had been purchased pursuant to an agreement to transfer the title to others, and that the transferees were not bona fide purchasers for value.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. § 120.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
   208 F.—14

Appeals from the District Court of the United States for the Central Division of the District of Idaho; Frank S. Dietrich, Judge.

Suits by the United States against William F. Kettenbach and others to cancel and annul certain patents previously issued by the United States for lands situated in Idaho, under the Timber and Stone Act, and to have the lands returned to the public domain. From decrees in favor of complainant for a part only of the relief demanded, it appeals in each case. Reversed in part, with instructions to enter decrees in favor of the United States in accordance with the prayer of the bills with respect to specified patents, and affirmed as to other specified patents.

See, also, 175 Fed. 463.

The United States of America, the appellant in each of the above-entitled actions, filed three separate bills in equity in the United States District Court for the District of Idaho, for the purpose of having canceled, set aside, and declared null and void certain patents theretofore granted by the appellant for lands lying in that state and district, and to have said lands restored to the public domain.

The bills are in substance and effect identical. In each it is alleged that, prior to the acts therein complained of, the complainant was the owner of the lands therein described, such lands constituting a part of the public domain and situated within the state and district of Idaho; that by an act of Congress of the United States, entitled "An act for the sale of timber lands in the states of California, Oregon, Nevada and in Washington Territory," approved June 3, 1878 (chapter 151, 20 Stat. 89), as amended and extended to all public land states by the Act of Congress of August 4, 1892, c. 375, 27 Stat. 348 (U. S. Comp. St. 1901, p. 1545), it was provided, among other things, in substance that surveyed public lands of the United States within the public land states, valuable chiefly for timber but unfit for cultivation, might be sold to citizens of the United States, or persons who had declared their intention to become such, in quantities not to exceed 160 acres to any one person or association of persons, at the minimum price of $2.50 per acre; that it was further provided in said act "that any person desiring to avail himself of the provisions of this act shall file with the register of the proper district a written statement in duplicate * * * setting forth * * * that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit, and that he has not, directly or indirectly, made any agreement or contract in any way or manner, with any person or persons whomsoever, by which the title which he might acquire from the government of the United States shall inure, in whole or in part, to the benefit of any person except himself"; that said statement was required by said act to be verified by the oath of the applicant before the register or receiver of the land office within the district where the land was situated; that said act further provided that, "if any person taking such oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury and shall forfeit the money which he may have paid for said lands and all right and title to the same, and any grant or conveyance which he may have made, except in the hands of bona fide purchasers, shall be null and void."

The bills further alleged that on the 1st day of July, 1902, and at divers other times before and after that date, and before the making of the several entries therein mentioned and designated, William F. Kettenbach, George H. Kester, Clarence W. Robnett, and William Dwyer, with divers other persons, did unlawfully and corruptly combine, conspire, confederate, and agree together, and with each other, and with divers other persons, and did form, make, and enter into an unlawful, corrupt, and fraudulent conspiracy, combination, and agreement with each other and with such other persons, for the purpose and to the end of defrauding the complainant of the title and ownership of divers large tracts of public land then owned by the complainant, by means of false, fraudulent, and unlawful entries to be made of the aforesaid tracts of public land, and by means of perjury, the subornation of per-

jury, the procurement of false swearing, and by means of other falsehoods, whereby the officers of the United States should be deceived and imposed upon, and should be induced and procured to divest the United States of its title to the said lands, and to convey said title of the United States to divers persons not lawfully entitled thereto, contrary to the laws of the United States, and for the benefit, advantage, and profit of the said defendants; that after the formation and making of the said unlawful conspiracy and agreement so as aforesaid made and entered into by the said defendants, and at divers times in the state of Idaho, in pursuance and execution of the said conspiracy, and for the purpose of effecting the said unlawful purpose thereof, the said defendants, or some of them, did make and enter into fraudulent, corrupt, and unlawful contracts, agreements, arrangements, and understandings with a large number of persons; that in and by said unlawful contracts, agreements, arrangements, and understandings so as aforesaid made by the said defendants with the said persons, each of the said persons severally agreed and arranged with the said defendants, or with some of them, that he or she would make an entry or purchase a tract of the public land of the United States under and in pretended and apparent accordance with the aforesaid act of Congress approved June 3, 1878, as amended on August 4, 1892, and would, upon obtaining title to the said tract from the United States, convey the said title and tract to the defendants, or to some of them; that the said persons severally did apply to enter, and did make entries of divers tracts of public land of the United States, and each of the said persons did consequently and in the usual course of administration of the public laws obtain from the United States a patent whereby the United States conveyed to each of the said persons, severally, the tracts by him or her entered; that each of said persons so making entry of and obtaining title to the tract by him or her entered did apply to make and did make such entry, and did prosecute and carry on the proceedings, at the solicitation and instigation of the said defendants, being moved and stimulated thereto by the advice, request, and promises of the said defendants, and therein acting upon, in pursuance of, and in accordance with the unlawful, corrupt, and fraudulent agreement, arrangement, and understanding theretofore made and entered into as aforesaid between him or her and the said defendants; that, by reason of the unlawful conspiracy among the said defendants and the said other persons who made the entries enumerated and designated in the said complaints, the perjury procured by the said defendants, and committed by the said other persons in the procurement of the said entries, and the false swearing, misrepresentations, and concealment of material facts committed and practiced by the said persons, the said entries, and each of them, were unlawfully made, and were and are illegal, fraudulent, and invalid, and the United States was and is defrauded thereby; and that the said patents, by reason of the said facts, are invalid, and are voidable at the suit of the United States, as having been procured by fraud, perjury, misrepresentation, and imposition, and in violation of law, and as having been issued and granted under fraudulent imposition and mistake of fact, and in fraud of the United States.

The complainant prayed that the patents issued to the entrymen named in the bills be declared void, be held for naught, and set aside, and that the said lands be restored to the public domain of the complainant.

In the bill of complaint filed in appeal No. 2,209, the complainant, for the causes mentioned, attacked the validity of 17 patents, issued to the following entrymen: Patent No. 4,049, issued February 25, 1904, to Carrie D. Maris; patent No. 4,385, issued August 3, 1904, to John H. Little; patent No. 4,384, issued August 3, 1904, to Ellsworth M. Harrington; patent No. 4,389, issued August 3, 1904, to Wren Pierce; patent No. 4,390, issued August 3, 1904, to Benjamin F. Bashor; patent No. 4,393, issued August 3, 1904, to Joseph B. Clute; patent No. 4,395, issued August 3, 1904, to Francis M. Long; patent No. 4,396, issued August 3, 1904, to John H. Long; patent No. 4,397, issued August 3, 1907, to Benjamin F. Long; patent No. 4,414, issued August 3, 1904, to Bertsel H. Ferris; patent No. 4,415, issued August 3, 1904, to George Ray Robinson; patent No. 4,762, issued December 31, 1904, to Charles W. Taylor; patent No. 4,764, issued December 31, 1904, to Jackson O'Keefe; patent No. 4,765, issued December 31, 1904, to Edgar J. Taylor; patent No. 4,766, issued

December 31, 1904, to Joseph H. Prentice; patent No. 4,772, issued December 31, 1904, to Fred E. Justice; patent No. 4,799, issued December 31, 1904, to Edgar H. Dammarell.

In the bill of complaint filed in appeal No. 2,210, the complainant, for the causes mentioned, attacked the validity of 37 patents, issued to the following entrymen: Patent No. 4,054, issued February 25, 1904, to William B. Benton; patent No. 4,055, issued February 25, 1904, to Joel H. Benton; patent No. 4,213, issued July 2, 1904, to George W. Harrington; patent No. 4,306, issued July 2, 1904, to Pearl Washburn; patent No. 4,352, issued August 3, 1904, to Van V. Robertson; patent No. 4,357, issued August 3, 1904, to John W. Killinger; patent No. 4,359, issued August 3, 1904, to John E. Nelson; patent No. 4,365, issued August 3, 1904, to Robert O. Waldman; patent No. 4,377, issued August 3, 1904, to Soren Hansen; patent No. 4,391, issued August 3, 1904, to James C. Evans; patent No. 4,392, issued August 3, 1904, to Lon E. Bishop; patent No. 4,393, issued August 3, 1904, to Joseph B. Clute; patent No. 4,394, issued August 3, 1904, to Frederick W. Newman; patent No. 4,404, issued August 3, 1904, to Charles Dent; patent No. 4,405, issued August 3, 1904, to Charles Smith; patent No. 4,411, issued August 3, 1904, to George Morrison; patent No. 4,412, issued August 3, 1904, to Edward M. Hyde; patent No. 4,477, issued September 9, 1904, to Drury M. Gammon; patent No. 4,635, issued November 1, 1904, to William Haevernick; patent No. 4,641, issued November 1, 1904, to Geary Van Artsdalen; patent No. 4,770, issued December 31, 1904, to Guy L. Wilson; patent No. 4,771, issued December 31, 1904, to Frances A. Justice; patent No. 4,773, issued December 31, 1904, to Edna P. Kester; patent No. 4,774, issued December 31, 1904, to Elizabeth Kettenbach; patent No. 4,775, issued December 31, 1904, to William J. White; patent No. 4,776, issued December 31, 1904, to Elizabeth White; patent No. 4,777, issued December 31, 1904, to Mamie P. White; patent No. 4,779, issued December 31, 1904, to Martha E. Hallett; patent No. 4,780, issued December 31, 1904, to Daniel W. Greenburg; patent No. 4,781, issued December 31, 1904, to David S. Bingham; patent No. 4,784, issued December 31, 1904, to William McMillan; patent No. 4,785, issued December 31, 1904, to Hattie Rowland; patent No. 5,015, issued May 29, 1907, to William E. Helkenberg; patent No. ———, issued November 1, 1904, to Alma Haevernick; patent No. ———, issued January 28, 1904, to Rowland A. Lambdin; patent No. ———, issued January 28, 1904, to Fred W. Shaeffer; patent No. ———, issued September 9, 1904, to Ivan R. Cornell.

In the bill of complaint filed in appeal No. 2,211, the complainant, for the causes mentioned, attacked the validity of eight patents, issued to the following entrymen: Patent No. ———, issued September 11, 1907, to Charles E. Loney; patent No. ———, issued September 19, 1907, to Mary A. Loney; patent No. ———, issued December 28, 1907, to Frank J. Bonney; patent No. ———, issued September 11, 1907, to James T. Jolly; patent No. ———, issued June 3, 1909, to Effie A. Jolly; patent No. ———, issued September 11, 1907, to Charles S. Myers; patent No. ———, issued September 11, 1907, to Jannie Myers; patent No. ———, issued September 11, 1907, to Clinton E. Perkins.

The defendants, in the several answers filed by them in each of said actions, denied all of the material portions of the bills of complaint, and particularly and specifically denied all unlawful combination, confederation, or conspiracy, as charged in said bills.

At the request of all of the parties to the actions, special examiners were appointed to take the testimony, and to report the same to the District Court. Upon the taking of the testimony it was stipulated by and between all of the parties to the actions that the testimony of all of the witnesses of all of the parties to the said causes produced and taken before the special examiners in all of said causes should be considered as having been taken in each and all of said causes, and should go to make up the record in each and all of said causes with the same force and effect as though said causes were consolidated.

In the judgment and decree entered in the court below, the relief prayed for by the appellant was denied as to the patents granted to the entrymen des-

ignated in appeal No. 2,209, and in appeal No. 2,211, and the bill of complaint in each of these actions was dismissed for want of equity. As to the patents granted to the entrymen designated in appeal No. 2,210, the relief prayed for by the appellant was denied with the exception of the patents issued to Guy L. Wilson (No. 4,770), to Francis A. Justice (No. 4,771), and to Robert O. Waldman (No. 4,365). The patents issued to the three last-named entrymen, and numbered respectively 4,770, 4,771, and 4,365, were by said judgment and decree ordered delivered to the clerk of the court to be canceled, and it was further adjudged and decreed that the lands described therein were then and at all times had been the property of the complainant, the United States of America.

Upon motion of the appellant, made in appeal No. 2,209, it was ordered that appeal No. 2,210 and appeal No. 2,211 be consolidated with it, for hearing and argument in this court.

Peyton Gordon, Sp. Asst. to the Atty. Gen., of Washington, D. C., for the United States.

James E. Babb, of Lewiston, Idaho, for appellees Frank W. Kettenbach, Clearwater Timber Co., Idaho Trust Co., Lewiston Nat. Bank, and Potlatch Lumber Co.

George W. Tannahill, of Lewiston, Idaho, for William F. Kettenbach, George H. Kester, William Dwyer, Elizabeth White, Edna P. Kester, Martha E. Hallett, and Kittie E. Dwyer.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

MORROW, Circuit Judge (after stating the facts as above). 1. It is contended by the complainant in this court that the patents described in these three cases should be declared fraudulent and void on the single ground that the evidence establishes the fact that the entrymen applied to purchase the lands described in their entries for the purpose of speculation. Section 2 of the Act of June 3, 1878, does require the entryman to set forth in his sworn statement, among other things:

"That he does not apply to purchase the same (the land) on speculation, but in good faith to appropriate it to his own exclusive use and benefit."

The definition of the word "speculation" is given by Webster as "the act or practice of buying land, goods, shares, etc., in expectation of selling at a higher price." It may be conceded that, when the entrymen made entry of the lands in controversy, it was with the expectation that they would sell them at a higher price; but we are not required to dispose of these appeals upon these words of the statute.

[1] The cases are not so presented in the bills of complaint and were not so tried in the court below. The charge in the bills of complaint is, in substance, that, at the time the entrymen made application to purchase the lands described in their entries, they had made an agreement with certain persons by which the title to the land which they were to acquire from the United States should inure to the benefit of persons other than themselves. Whether this charge was true or not was the question at issue in the court below, and to this issue the voluminous testimony we find in the record was directed, and is now before the court for the purpose of determining these appeals.

It is this question, and this question alone, we must determine with respect to the 61 patents assailed in these cases.

[2, 3] 2. In a number of recent decisions, the Supreme Court of the United States has determined just what acts may be construed as fraudulent in cases of entries upon claims under the Timber and Stone Act of June 3, 1878, as amended and extended by the Act of August 4, 1892. In these decisions, the law has become well settled that the act does not in any respect limit the dominion which the purchaser has over the land after its purchase from the government, or restrict in the slightest his power of alienation; that all that it denounces is a prior agreement, the acting for another in the purchase; that, if when the title passes from the government no one save the purchaser has any claim upon it, or any contract or agreement for it, the act is satisfied; and that an applicant is not required, after he has made his preliminary sworn statement concerning the bona fides of his application and the absence of any contract or agreement in respect·to the title, to additionally swear to such facts on final proof. United States v. Budd, 144 U. S. 154, 12 Sup. Ct. 575, 36 L. Ed. 384; Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278.

[4] In the cases which we now have before us for decision, the testimony is. very voluminous. A great portion of it relates to acts ·of the entrymen,. and of the defendants, or some of them, at the time of making final proof, or prior to that time and subsequent to the making of the original application to purchase the land. Under the decisions just referred to, this testimony was only admissible and can only be considered by this court in so far· as it tends to establish the fraudulent purpose of the entrymen with respect to the land in controversy at the time of the original application.

[5]· The most direct and positive testimony in support of the allegations of conspiracy to defraud the government, on the part of the defendants, is the testimony of Clarence W. Robnett. But he is one of the defendants charged as a co-conspirator, and for that reason his testimony is to be treated as that of an accomplice and is to be received cautiously and scrutinized with care. It is also true that his testimony is not altogether free from contradictions and misstatements, and, were it not for the corroborating testimony of the entrymen, we should reject it altogether. But after a careful reading of the testimony of these witnesses, and after considering their statements in connection with admitted facts and all the surrounding circumstances, we are convinced that the testimony of Robnett as to the material facts with respect to a number of the entries·is in the main correct. Robnett testified that he overheard and participated in various 'conversations between George H. Kester and William F. Kettenbach about the timber situation in Idaho; that during these conversations Kester and Kettenbach stated that they believed they could make a "great deal" of money out of the timber; that the plan that Kester and Kettenbach· talked over at different times was relative to getting entrymen to file on claims and to pay such entrymen for their right; that the entrymen were to go up into the timber and see the claims, come back and file, prove up, and deed the claims over to whomever Kester and Ket-

tenbach might designate; and that the latter were to furnish all expenses incurred by the entrymen in the performance of these acts. Now, the manner in which many of the claims the validity of which is attacked by these bills were taken up by the various entrymen, and afterwards sold to the defendants, or to some of them, coincides so entirely even in smaller details, with the plan which, according to the testimony of Robnett was outlined by Kester, Kettenbach, and himself as early as 1902, that the force of it cannot be ignored.

We proceed to a consideration of the question whether the allegations of the bills of complaint are sustained by the testimony with respect to the existence of fraud on the part of the entrymen, and on the part of the defendants, at the time of the filing of the original application in each instance, reserving for consideration in another paragraph of this opinion the question as to whether the present holders of the legal title to such claims as have passed from the ownership of the original entrymen obtained the same as innocent purchasers. In the plan outlined, the three appeals (together with the respective patents involved in each) will be considered in their numerical order.

3. With respect to the claims set forth in appeal No. 2,209, it is conceded by the government that there is not sufficient evidence to justify the cancellation of the patent issued to Fred E. Justice. We think that this is equally true in the instances of the patents issued to Wren Pierce, Benjamin F. Bashor, Joseph B. Clute, Francis M. Long, John H. Long, Benjamin F. Long, Charles W. Taylor, Jackson O'Keefe, Edgar J. Taylor, Joseph H. Prentice, and Edgar H. Dammarell. As to the patents issued to these entrymen, the judgment and decree of the court below will not be disturbed. But as to the other claims, the validity of which is attacked in appeal No. 2,209, to wit, the claims of Carrie D. Maris, John H. Little, Ellsworth M. Harrington, Bertsell H. Ferris, George Ray Robinson, there is the direct testimony of Clarence W. Robnett that he had an agreement with each of the entrymen last named, whereby each was to enter upon a claim, and, after proving up on it, was to deed it to whomsoever Robnett should designate. The testimony of Robnett in this particular is corroborated by the testimony of the entrymen, each of whom stated that his claim was taken up at the instigation of Robnett, and, indeed, some of the entrymen testified directly that there was an agreement between them and Robnett, whereby the latter was to pay all of the expenses of securing the claim, and that they were afterwards to sell the claim to a purchaser to be secured by Robnett. In most instances the entryman was to receive a stipulated sum; in some cases $100, in others $150, in still others $200, and in one instance at least the profits to be made upon a sale of the claim were to be divided between Robnett and the entryman. The expenses incident to securing each of the claims entered upon by the persons last above named were paid by Robnett, the money being advanced by him directly for that purpose, or given to them by him as a loan, to secure which they gave their notes. In addition to the facts which we have thus briefly set forth, there are other facts, of less import, which we think fully sustain the allegations of the bill that each of the timber and stone entries last above set forth

was made under and by virtue and in pursuance of a prior agreement existing between each of the entrymen and Clarence W. Robnett, and that such agreement was entered into by Robnett with each of said entrymen pursuant to the unlawful conspiracy to defraud the government theretofore existing between him and the defendants George H. Kester and William F. Kettenbach.

4. In appeal No. 2,210, the court below denied the prayer of the complainant's bill as to all of the patents sought to be canceled in that action, with the exception of the patents issued to Guy L. Wilson, Frances A. Justice, and Robert O. Waldman; the patents issued to the entrymen last named being by the decree of that court ordered set aside and canceled. We are therefore not called upon to consider the bona fides of the three entrymen last named. It is conceded by the complainant in this court that the evidence is not sufficient to justify the cancellation of the patents issued to George W. Harrington, John W. Killinger, Geary Van Artsdalen, and William E. Helkenberg. We think this is also true with respect to the patents issued to Pearl Washburn, Van V. Robertson, James C. Evans, George Morrison, Edward M. Hyde, William Haevernick, Edna P. Kester, Elizabeth Kettenbach, William J. White, Elizabeth White, Mamie P. White, Martha E. Hallett, Daniel W. Greenburg, Hattie Rowland, and Alma Haevernick. In most of the cases last named the claims are still owned by the original entrymen. There is no sufficient evidence to support the allegations of the bill respecting their acquisition by means of fraud, and as to them the judgment of the court below is affirmed. But as to the other entries the validity of which is attacked in this appeal, to wit, the entries of William B. Benton, Joel H. Benton, John E. Nelson, Soren Hansen, Drury M. Gammon, Lon E. Bishop, Frederick W. Newman, Charles Dent, Charles Smith, David S. Bingham, William McMillan, Rowland A. Lambdin, Ivan R. Cornell, and Fred W. Shaeffer, much that has been said with respect to the claims which we think should be forfeited in appeal No. 2,209 applies with equal force to the claims last enumerated. The claims of William B. Benton, Joel H. Benton, John E. Nelson, Soren Hansen, and Drury M. Gammon were taken up at the request or with the assistance of Clarence W. Robnett. The claims of Lon E. Bishop, Frederick W. Newman, Charles Dent, and Charles Smith were taken up at the request or with the assistance of one Fred W. Emory. The claim of David S. Bingham was taken up at the request or with the assistance of one Jackson O'Keefe. The claims of William McMillan, Rowland A. Lambdin, Ivan R. Cornell, and Fred W. Shaeffer were taken up at the request or with the assistance of George H. Kester. In the main, the plan pursued by the entrymen in the acquisition of these claims from the government was similar to the method whereby the entrymen acquired title to the claims which we think should be canceled in appeal No. 2,209. Some of the entrymen testified that they had agreements for the sale of their claims, with the person at whose request or with whose assistance they entered upon the land, prior to the filing of the original application therefor. In all of the entries last enumerated, the testimony can permit of but one conclusion: That the claims were taken up in pursu-

ance of unlawful agreements entered into between the entrymen and the persons at whose request or with whose assistance the claims were taken up, and that said agreements were entered into between said parties pursuant to the unlawful conspiracy to defraud the government theretofore existing between the defendants George H. Kester, William F. Kettenbach, and Clarence W. Robnett.

5. The eight claims set forth in appeal No. 2,211, and which were filed upon by Charles E. Loney, Mary A. Loney, Frank J. Bonney, James T. Jolly, Effie A. Jolly, Charles S. Myers, Jannie Myers, and Clinton E. Perkins, were secured for the entrymen named by one Harvey J. Steffey. Steffey testified that he had an understanding with one William Dwyer, who is made a defendant in this action, relative to locating entrymen on claims under the Timber and Stone Act; that he knew that Dwyer and George H. Kester and William F. Kettenbach were working together; that his understanding with Dwyer was that the entrymen would transfer their claims to Kester and Kettenbach; that he (Steffey) was to pay each entryman $200, and each entryman, after he had made final proof, was to convey to Kester and Kettenbach; and that the eight entries enumerated in the bill filed in this appeal were made by the entrymen therein named in accordance with the agreement that Steffey had with William Dwyer. In support of the testimony given by Steffey, it appears from the testimony of each of the entrymen that he was given the money for the expenses incident to taking up the claim by Steffey; and it also indisputably appears in the case of each entry involved in this appeal that the entryman was assured by Steffey that he could make from $150 to $250 out of the transaction, and that in order to realize such sum the claim was to be sold by the entryman. We think that this testimony alone is fully sufficient to establish the fact that each of the entrymen named in this appeal had an agreement with Harvey J. Steffey, prior to making entry upon the claim, for the sale of his claim, and that Steffey was in the whole transaction acting as an agent for the defendants William Dwyer, George H. Kester, and William F. Kettenbach.

6. The remaining question to be reviewed in these appeals is: Were the present holders of the legal title to such of the claims as have passed from the ownership of the original entrymen (and which we have determined were fraudulently obtained from the government) purchasers in good faith without knowledge of the facts rendering the entries invalid? The claims which, for the reasons hereinabove stated, we have determined were fraudulently obtained from the government, are those entered upon by the following entrymen: Carrie D. Maris, John H. Little, Ellsworth M. Harrington, Bertsell H. Ferris, George Ray Robinson, William B. Benton, Joel H. Benton, John E. Nelson, Soren Hansen, Drury M. Gammon, Lon E. Bishop, Frederick W. Newman, Charles Dent, Charles Smith, David S. Bingham, William McMillan, Rowland A. Lambdin, Ivan R. Cornell, Fred W. Shaeffer, Charles E. Loney, Mary A. Loney, Frank J. Bonney, James T. Jolly, Effie A. Jolly, Charles S. Myers, Jannie Myers, and Clinton E. Perkins. Of the claims taken up by the entrymen last enumerated, the legal title to the claims held by the following entrymen was, at the time of the

commencement of these actions, respectively, vested in the defendants George H. Kester, or William F. Kettenbach, individually, or in George H. Kester and William F. Kettenbach jointly, namely: Carrie D. Maris, John H. Little, Ellsworth M. Harrington, Bertsell H. Ferris, George Ray Robinson, Soren Hansen, Charles Loney, Mary A. Loney, Frank J. Bonney, James T. Jolly, Effie A. Jolly, Charles S. Myers, Jannie Myers, and Clinton E. Perkins. As to the claims entered upon by the entrymen last named, the legal title to which is now vested in George H. Kester, or in William F. Kettenbach, individually, or in George H. Kester and William F. Kettenbach jointly, the question as to whether they or either of them were innocent purchasers cannot arise, in the light of the conclusion at which we have arrived concerning the claims which they now own: That each of such claims was taken up in pursuance of a conspiracy to defraud the government of the United States existing between the defendants George H. Kester and William F. Kettenbach, and certain other of the defendants named in these actions, prior to the initial entry. Of the remaining claims which, as we have determined, were taken up in fraud of the United States, the legal title to the claims entered upon by Lon E. Bishop, Frederick W. Newman, Charles Dent, Charles Smith, David S. Bingham, and William McMillan is now vested in the Idaho Trust Company, a corporation; the legal title to the claims entered upon by Rowland A. Lambdin, Ivan R. Cornell and Fred W. Shaeffer is now vested in the Potlatch Lumber Company, a corporation; the legal title to the claim entered upon by Drury M. Gammon is now vested in the Lewiston National Bank, a corporation; the legal title to the claims entered upon by William B. Benton and Joel H. Benton is now vested in the Clearwater Timber Company, a corporation; and the legal title to the claim entered upon by John E. Nelson is now vested in Elizabeth W. Thatcher. We shall review the testimony concerning the acquisition of these claims by the present owners thereof in the order designated.

With respect to the six claims the legal title to which is now vested in the Idaho Trust Company, to wit, the claims of Lon E. Bishop, Frederick W. Newman, Charles Dent, Charles Smith, David S. Bingham, and William McMillan, the facts surrounding their purchase by the trust company are as follows: On July 6, 1907, George H. Kester and William F. Kettenbach, who on that date were the holders of the legal title to each of the claims last enumerated (with the exception of the claim of William McMillan), sold and transferred all of said claims so held by them to the Idaho Trust Company. On July 23, 1907, the said George H. Kester and William F. Kettenbach executed a trust agreement to and with the Idaho Trust Company, reciting the deed of July 6, 1907, and defining the terms and conditions upon which the trust company should hold the title to the real estate conveyed to it by said deed. Under the terms of the trust agreement, the Idaho Trust Company was to hold said real estate in trust for George H. Kester and William F. Kettenbach, their heirs, executors, administrators, and assigns. In and by the trust agreement, no power was given to the trust company to sell any portion of said real estate, except at

such prices and upon such terms as George H. Kester and William F. Kettenbach, in writing, should direct. After a full consideration of all the facts disclosed by the record incident to the transfer to and purchase by the Idaho Trust Company of the claims last hereinabove enumerated, and included in the deed of July 6, 1907, we agree with the contention of the appellant that the Idaho Trust Company is merely the holder of the record title to said claims, and that the entire control and disposition of said claims still remain in the hands of George H. Kester and William F. Kettenbach, who, as we have heretofore determined, acquired them from the original entrymen with full knowledge of the facts rendering the entries invalid, and in fraud of the government of the United States.

The remaining claim now owned by the Idaho Trust Company, to wit, that of William McMillan, was conveyed by the entryman to Kittie E. Dwyer, by deed dated April 9, 1906. The sale of this claim by the entryman was negotiated by William Dwyer, the husband of the grantee. The entryman testified that he negotiated with William Dwyer for the sale of his claim with the consent of George H. Kester, who had rendered him financial assistance in securing the claim, and it cannot be seriously questioned that in this transaction, as well as in the other transactions to which we have referred, William Dwyer was acting for and on behalf of the defendants George H. Kester and William F. Kettenbach, and with full knowledge of the facts rendering the claim invalid. By deed dated December 31, 1908, Kittie E. Dwyer, together with her husband, William Dwyer, conveyed said claim to the Idaho Trust Company. On the same date, Kittie E. Dwyer and her said husband executed a trust agreement with said trust company, reciting the conveyance to said trust company of even date therewith, and setting forth and defining the conditions upon which the trust company should hold the real estate conveyed to it by said deed. The terms and conditions of this trust agreement were similar to the terms and conditions of the trust agreement executed by and between the Idaho Trust Company and George H. Kester and William F. Kettenbach, to which we have just referred, and with respect to this claim also we are of opinion that the Idaho Trust Company is merely the holder of the record title and that the entire control and disposition of it still remain in the hands of William Dwyer and his wife, Kittie E. Dwyer, who acquired said claim from the entryman with full knowledge of the facts rendering the entry invalid.

With respect to the claims of Rowland A. Lambdin, Ivan R. Cornell, and Fred W. Shaeffer, the legal title to which is now vested in the Potlatch Lumber Company, a corporation, it is conceded by the appellant that said corporation was an innocent purchaser thereof, without knowledge of the facts rendering the entries invalid.

With respect to the claim of Drury M. Gammon, the legal title to which is now vested in the Lewiston National Bank, said claim was sold by the entryman to Clarence W. Robnett by deed dated October 9, 1903, and was transferred by Robnett to the Lewiston National Bank by deed dated November 25, 1904. At the time this claim was purchased by the Lewiston National Bank, George H. Kester was cashier

thereof, William F. Kettenbach was president thereof, and Clarence W. Robnett (at whose request or with whose assistance this claim was acquired by the entryman) was employed as a bookkeeper therein. In the paragraph of this opinion numbered 4, we have stated that we were of the opinion, for the reasons therein set forth, that this claim, together with the other claims therein enumerated, were taken up in pursuance of unlawful agreements entered into between the entrymen and the person at whose request or with whose assistance said claims were acquired, and that such agreements were entered into between said parties pursuant to the unlawful conspiracy to defraud the government theretofore existing between the defendants George H. Kester, William F. Kettenbach, and Clarence W. Robnett. That fact being established, in connection with the fact that the defendants named were officers and employés of the Lewiston National Bank at the time of the purchase of said claim by that bank, and the further fact William F. Kettenbach and George H. Kester had complete charge of the management of the affairs of said bank during all of the time that they held their respective offices therein, we are forced to reject the contention of the appellees that the Lewiston National Bank was an innocent purchaser of the said claim and was unaware of the facts rendering the entry invalid.

With respect to the claims of William B. Benton and Joel H. Benton, the legal title to which is vested in the Clearwater Timber Company, a corporation, and the claim of John E. Nelson, the legal title to which is vested in Elizabeth W. Thatcher, there is very little, if any, testimony in the record tending to show the circumstances surrounding the acquisition of these claims by the present owners thereof; and, although we are convinced that each of said claims was acquired by the original entryman in fraud of the government of the United States, still the testimony appears to be sufficient to establish the fact that each of said claims was acquired by the present owner of the legal title without knowledge of the facts rendering the original entry invalid.

7. We are of opinion that the charge of conspiracy to defraud the United States out of the title and possession of the lands described in the bills of complaint has been established with respect to the entries upon which the following enumerated patents have been issued, and that, by reason of such fraudulent proceeding on the part of the entrymen and the defendants, the patents are null and void and should be surrendered up and canceled, and the lands as described restored to the public domain, namely:

In appeal No. 2,209: Patent No. 4,049, issued February 25, 1904, to Carrie D. Maris; patent No. 4,385, issued August 3, 1904, to John H. Little; patent No. 4,384, issued August 3, 1904, to Ellsworth M. Harrington; patent No. 4,414, issued August 3, 1904, to Bertsell H. Ferris; patent No. 4,415, issued August 3, 1904, to George Ray Robinson.

In appeal No. 2,210: Patent No. 4,377, issued August 3, 1904, to Soren Hansen; patent No. 4,392, issued August 3, 1904, to Lon E. Bishop; patent No. 4,394, issued August 3, 1904, to Frederick W. Newman; patent No. 4,404, issued August 3, 1904, to Charles Dent;

patent No. 4,405, issued August 3, 1904, to Charles Smith; patent No. 4,477, issued September 9, 1904, to Drury M. Gammon; patent No. 4,781, issued December 31, 1904, to David S. Bingham; patent No. 4,484, issued December 31, 1904, to William McMillan.

In appeal No. 2,211: Patent No. ——————, issued September 11, 1907, to Charles E. Loney; patent No. ——————, issued September 19, 1907, to Mary A. Loney; patent No. ——————, issued December 28, 1907, to Frank J. Bonney; patent No. ——————, issued September 11, 1907, to James T. Jolly; patent No. ——————, issued June 3, 1909, to Effie A. Jolly; patent No. ——————, issued September 11, 1907, to Charles S. Myers; patent No. ——————, issued September 11, 1907, to Jannie Myers; patent No. ——————, issued September 11, 1907, to Clinton E. Perkins.

It is accordingly ordered that the decrees of the court below, with respect to the patents named, be reversed, with instructions to enter decrees in favor of the United States in accordance with the prayer of the bills with respect to such patents; and with respect to all the other patents mentioned in the bills of complaint the decrees be affirmed.