(No. 12076.—Decree reversed.)

THE UNITED STATES OF AMERICA, Appellant, *vs.* JACOB
DAVID GERSTEIN, Appellee.

*Opinion filed June 20, 1918.*

1. ALIENS—*one who knowingly violates the Sunday-closing law
should not be naturalized.* A person who knowingly and habitually
violates the State law for the closing of saloons on Sunday, even
if there is no attempt by the authorities to enforce the law, is not
a person of good moral character within the meaning of the Fed-
eral statute for the naturalization of aliens, notwithstanding he has
for a period of two years preceding the hearing of his application
obeyed such law in response to a notice from the city authorities
that they would enforce the law.

2. SAME—*admission of aliens to citizenship is not a mere mat-
ter of form.* The admission of aliens to citizenship in the United
States is not a mere matter of form, but that privilege, with all the
benefits that flow from it, will be conferred only on those who show
themselves to possess the qualifications required by the naturali-
zation laws.

3. STATUTES—*a law should be obeyed and enforced regardless
of public sentiment.* The binding force and effect of a law and
the duty of persons to obey it and of courts to enforce it cannot be
made to depend upon the public sentiment as to its wisdom or un-
wisdom or on the opinion of a court whether it is a good or bad law.

APPEAL from the Superior Court of Cook county; the
Hon. CHARLES M. FOELL, Judge, presiding.

MERTON A. STURGES, and W. H. WAGNER, for appel-
lant.

SAMUEL BLAIR, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal by the United States from an order
and decree of the superior court of Cook county directing
that a certificate of naturalization be issued to Jacob David
Gerstein, appellee. Gerstein filed his petition for admission

to citizenship January 25, 1916. A hearing was had on the petition December 14, 1917, and a certificate of naturalization ordered issued to petitioner, from which order and decree the government has appealed to this court.

It was stipulated that the appellee is a saloon-keeper and had been continuously engaged during the last eight years in that business; that from the time he engaged in the business until October 10, 1915, he kept his saloon open and sold intoxicating liquors on each Sunday; that during the time he kept his saloon open on Sunday he was familiar with the fact that a State law of Illinois required saloons to be closed on Sunday, but with knowledge of the law forbidding it he kept his saloon open on Sunday until October 10, 1915, when he was advised by the municipal authorities of the city of Chicago that they intended from that date to enforce the law, and because of that intention of the municipal authorities appellee has since that time kept his saloon closed on Sunday and sold no liquor on that day. It was also stipulated that previous to October 10, 1915, saloons in the city of Chicago were kept open on Sunday without concealment, and neither the State nor municipal authorities molested them or made any effort to enforce the Sunday-closing law. It was further agreed that since October 10, 1915, appellee has kept his saloon closed on Sundays and that he has complied with the requirements of the naturalization laws qualifying him for admission to citizenship, except in so far as his qualification may be affected by the violation of the Sunday-closing law as above stated. Such violation of the Sunday-closing law is the basis of the government's objection to appellee's admission to citizenship.

The Federal statute requires proof by at least two witnesses that the applicant for citizenship is a person of good moral character and in every way qualified to be admitted as a citizen of the United States. It must be made to appear to the satisfaction of the court that the applicant, during his five years' residence in the United States before ap-

plying for admission to citizenship, "has behaved as a man of good moral character, attached to the principles of the constitution of the United States and well disposed to the good order and happiness of the same." We held in *United States* v. *Hrasky,* 240 Ill. 560, that a person who habitually, knowingly and willfully violates the Sunday-closing law has not behaved as a man of good moral character, well disposed to the good order of the country. This view is not based on the theory or belief that it is any more or any less immoral to knowingly and intentionally violate the Sunday-closing law than any other law, and this view is supported by the decisions of most all the courts of this country.

The case of *In re Hopp,* 179 Fed. Rep. 561, relied on by appellee, involved the question whether an applicant for admission to citizenship who was a saloon-keeper in Milwaukee and kept his saloon open on Sunday in known violation of law was of good moral character and entitled to be made a citizen. The court said, for many years the statute known as the Sunday-closing law had been on the statute books but had not been obeyed; that neither the State nor municipal authorities had made any effort to enforce it and that the saloons had been kept open on Sunday without any attempt at concealment. The court said the preponderance of public sentiment in the city of Milwaukee was in harmony with the custom of keeping saloons open on Sunday; that the law was satisfied with the behavior of a citizen whose behavior is up to the level of the average citizen, and that the applicant should not be denied citizenship because he had fallen in with the general public sentiment of the community in which he lives. That case, so far as the decisions have been called to our attention, stands alone. In opposition to it, directly or in principle, are *In re Spenser,* 5 Sawyer, 195, *Groscop* v. *Ranier,* 111 Ind. 361, *Whissen* v. *Furth,* 73 Ark. 336, and a number of other cases. The authorities are practically unanimous that a person who habitually violates the law, whether the act is

*malum prohibitum* or *malum in se,* is not, within the meaning of the statute, a person of good moral character, notwithstanding he may be honest in business dealings and of clean private life. However many other virtues he may possess, if he is a willful and knowing violator of the law he is not a person of good moral character within the meaning of the statute.

It is said by appellee that in keeping his saloon open on Sunday he only did what 7000 others did in Chicago prior to October 10, 1915; that he was compelled to keep his saloon open on Sunday to satisfy his customers, who, if he did not keep open on Sunday, would go to other saloons and appellee would lose their patronage and be deprived of the means of earning a livelihood. We are not impressed by that argument. He may have been unfortunate in engaging in a business where he had to violate the law to make a success of the enterprise, but that cannot relieve him from the resultant effects upon his character of his lawless acts. This is in accordance with the great weight of judicial decisions. If the law were otherwise and a rule should be laid down that it is immoral to knowingly and willfully violate the law in a community where public sentiment approved the law but such violation would not be immoral in a community where public sentiment does not approve the law it would be most disastrous to the good order and well being of society. It must be assumed public sentiment of the State favored the Sunday-closing law, for the law requiring saloons to close on Sunday and making a violation of the requirement a criminal offense was enacted by the legislature more than half a century ago, has never been repealed but has been continuously on our statute books since it was first enacted. It being a general rule of law as well as of morals that willfully doing anything forbidden by the law of the land is immoral, it must follow that a person who so disregards and violates the law is not "well disposed to the good order and happiness" of the country.

284 - 12

It is contended that as the stipulation shows appellee had ceased violating the law by keeping his saloon open on Sundays October 10, 1915, which was three months before he filed his petition for naturalization and more than two years before the hearing, he was entitled, under the law, to admission to citizenship. The stipulation shows that the reason for appellee not opening his saloon on Sundays after October 10, 1915, was, that on that date he was notified that the municipal authorities would after that date enforce the law forbidding open saloons on Sundays. As appellee had during all the years he had been engaged in the business kept his saloon open on Sundays until notified the public authorities would enforce the law, it appears his ceasing to violate the law was not due to any reformation in him but to reformation in the authorities charged with enforcement of the law. The requirement of the Federal statute is that an alien applying for admission to citizenship shall show that for five years previous he "has behaved as a man of good moral character" and "well disposed to the good order and happiness" of the country. How can it be said that appellee placed himself within these requirements when it is admitted that for a period of several years he had knowingly violated the law and had only ceased doing so three months before filing his petition when notified the public authorities would enforce the law thereafter? It is immaterial that a large public sentiment did not favor obeying the law. It was enacted by the legislature by virtue of its constitutional powers, and whether it was approved by public sentiment as a good law or whether it was considered a bad law affords no criterion for determination by citizens and residents whether it should be obeyed. Whatever may influence persons to whom a law applies to violate and disregard it, courts are bound to enforce a valid law though the law be disapproved by public sentiment. It must be apparent to everyone that the binding force and effect of a law and the duty of persons to obey it and of courts to en-

force it cannot be made to depend upon the public sentiment as to its wisdom or unwisdom or on the opinion of a court whether it is a good or bad law.  If it is a law persons are bound to obey it and courts to enforce it.  If public opinion disapproves a law the legislature may be applied to to repeal it, but until repealed it is binding on the people and must be obeyed.  That public officers charged with enforcement of the law do not do so cannot change the effect upon the moral character of a man who willfully and habitually violates it.  Aliens asking admission to citizenship in the United States are asking a favor,—the greatest within the gift of the government.  It ought to be appreciated by the recipient, and Congress has thought wise to prescribe certain qualifications which must be possessed by the applicant for the priceless boon of citizen of the United States of America. It is required the applicant shall be worthy of the great privilege of citizenship, and one of the elements required to show worthiness is that he has been for five years a man of good moral character and well disposed to the good order and happiness of the country  The court said in *In re Centi,* 211 Fed. Rep. 559:  "The alien who seeks the privileges and blessings which citizenship in this country brings, should make it appear to the court not only that he believes in our form of government but that during his five years of probation he has made his conduct substantially conform to its laws as well."  It should be understood that admission of aliens to the blessings of citizenship in this country is not a mere matter of form, but that the great privilege, with all the benefits that flow from it, will be conferred only on those who show themselves to possess the qualifications required by our naturalization laws.

The order and decree of naturalization of the superior court is reversed and the application of appellee for citizenship denied, without prejudice to his right to file another application when time has removed the disqualification.

*Decree reversed.*