[S. F. No. 16533. In Bank.—June 24, 1941.]

In re GEORGE BOGUNOVIC on Naturalization.

GEORGE BOGUNOVIC, Appellant, v. UNITED STATES DEPARTMENT OF LABOR, NATURALIZATION SERVICE, Respondent.

Philip Adams, Wayne M. Collins, James J. Cronin, Jr., Charles R. Garry, Morris M. Grupp and Clarence E. Rust for Appellant.

Frank J. Hennessy, U. S. Attorney, R. B. McMillan and L. R. Mercado, Assistants U. S. Attorney, A. J. Phelan, U. S. Immigration and Naturalization Service, and Paul Armstrong and Allen T. Hunter, U. S. Department of Labor, Naturalization Service, for Respondent.

SHENK, J.—The petitioner has appealed from an order of the superior court denying his application for naturalization as a citizen of the United States.

Section 357 of Title 8, U. S. C. A., confers exclusive jurisdiction to naturalize aliens upon designated federal courts; "also all courts of record in any State or Territory having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited." No special provision is made concerning appeals. ▉ The question first presented is whether an appeal is allowable in such cases and particularly whether an appeal may be taken from the order of the superior court to a reviewing court of this state. The question seems to be answered by the decision in *Tutun* v. *United States*, 270 U. S. 568 [46 Sup. Ct. 425, 70 L. Ed. 738], where the contention was made that a naturalization proceeding was not a case within the meaning of the Judicial Code relating to appellate jurisdiction of the federal courts (sec. 225, Title 28,

U. S. C. A.) The Supreme Court held that "whenever the law provides a remedy enforceable in the courts according to the regular course of legal procedure, and that remedy is pursued, there arises a case within the meaning of the Constitution, whether the subject of the litigation be property or status. A petition for naturalization is clearly a proceeding of that character." The court rejected the contrary holding in the case of *United States* v. *Dolla,* 177 Fed. 101 [100 C. C. A. 521, 21 Ann. Cas. 665], and apparently approved the rule declaring that appellate jurisdiction exists in the state courts when such proceedings are commenced therein, citing *In re Fordiani,* 98 Conn. 435 [120 Atl. 338]; *United States* v. *Hrasky,* 240 Ill. 560 [88 N. E. 1031, 130 Am. St. Rep. 288, 16 Ann. Cas. 279]; *United States* v. *Gerstein,* 284 Ill. 174 [119 N. E. 922, 1 A. L. R. 318]; *Ex parte Smith,* 8 Blackf. 395; *Dean, Petitioner,* 83 Me. 489 [22 Atl. 385, 13 L. R. A. 229]; *State* v. *District Court,* 107 Minn. 444 [120 N. W. 898, 22 L. R. A. (N. S.) 1041]; *Ex parte Johnson,* 79 Miss. 637 [31 So. 208, 89 Am. St. Rep. 665]; *State* v. *District Court,* 61 Mont. 427 [202 Pac. 387]; *Rushworth* v. *Judges of Inferior Court,* 58 N. J. L. 97 [32 Atl. 743, 30 L. R. A. 761]; *United States* v. *Breen,* 135 App. Div. 824 [120 N. Y. Supp. 304]; *In re Karasick,* 208 App. Div. 844 [204 N. Y. Supp. 919]; *In re Vura,* 5 Ohio App. 334; *Ex parte Granstein,* 1 Hill (S. D.) 141. The court also called attention to the cases of *In re Wilkie,* 58 Cal. App. 22 [208 Pac. 144], and *State* v. *Superior Court,* 75 Wash. 239 [134 Pac. 916, Ann. Cas. 1915C, 425], in which the right of appellate review was denied. The decision in *In re Wilkie* followed the case of *United States* v. *Dolla,* which, as stated, was rejected by the Supreme Court in the Tutun case. Because of the decision in the latter case the question was left open in the case of *In re Hullen,* 124 Cal. App. 271 [12 Pac. (2d) 487], where the appeal was dismissed because not taken in time. The decision in *Tutun* v. *United States* indicates the correct rule, namely, that the applicant in a naturalization proceeding is entitled to the appropriate remedies available to litigants in any action or proceeding in the courts of the state, including the right of appeal.

The petitioner is an alien within the racial limitation of naturalization (sec. 359, Title 8, U. S. C. A.). Section 382 of that title provides that no alien shall be admitted to citizenship unless immediately preceding the date of his applica-

tion he has resided within the United States for at least five years and within the county of his residence at least six months, and that "during all the periods referred to in this section he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." The reason stated by the trial court for the denial of the application herein was that the applicant was "not attached to the principles of the Government of the United States."

The record shows that the applicant was born in Jugoslavia in 1891 and that he entered this country lawfully in 1909. He married a citizen of the United States, raised a family and settled in Cupertino in Santa Clara County, where he now resides. He has been engaged in farming in that community for about twenty years. He has no police record except for disregarding a stop signal, an infraction of the traffic regulations. He belonged to and was secretary of the Cupertino local of the Croatian Fraternal Union, which appears to be a fraternal and benevolent society.

An examiner on behalf of the United States Government opposed the application and cross-examined the applicant. The cross-examination was designed to disclose that the applicant was attached to the principles of communism rather than to the principles of the Constitution of the United States. About seven years prior to the filing of his application the applicant had subscribed to a weekly paper known as "Rodnik", which was the official publication of the "Communist Party of the United States of America", published in the Jugoslav language. He stated that he did not know at the time he subscribed that the paper was the organ of the communist party, but that he discovered the fact after he received it. He said that he resubscribed to the paper for another year because he wished to finish reading a serial story appearing in it, and had then dropped the subscription. The paper was circulated by a fellow lodge member named Nicholas. The applicant once received a bundle of the papers which he did not circulate. He did not remember whether his wife had burned them or Nicholas had circulated them. In some prior proceeding, whether in naturalization or deportation is not made clear, the applicant was requested to appear before an immigration officer. He appeared with

his counsel but when the latter was not permitted to be present, he followed the advice of his counsel and refused to make any statement. The examination does not disclose the nature of the statement then requested of him.

Witnesses on behalf of the applicant attested his peace loving disposition and habits and his good moral character; that there was no reason to suppose that he was not attached to the principles of the Constitution; that he had never been heard to advocate force or violence to overthrow the existing form of Government; that in their estimation he was well disposed and attached to this Government. The applicant stated under oath that he was attached to the principles of the United States Constitution and that he was well disposed to the good order and happiness of the United States. His intelligence was not questioned.

The applicant contends that the mere reading of the organ of the communist party more than five years prior to his application for citizenship was not sufficient to overcome the showing made by him that he was attached to the principles of the Constitution of the United States; that such fact was insufficient upon which to base the denial of his application, and that upon the foregoing record he was entitled to the statutory right of citizenship. It is to be noted that to accord citizenship to aliens is not to grant a right, but to confer a privilege. The alien has a statutory right to file his application, to submit his evidence to a court, to have the court pass upon the same, and to receive his certificate if the requisite showing be made. ██ The opportunity to become a citizen of the United States is a privilege as distinguished from a right, and the burden is upon the alien to establish the facts necessary to support his application. (*Tutun* v. *United States, supra*; *United States* v. *Macintosh,* 283 U. S. 605 [51 Sup. Ct. 570, 75 L. Ed. 1302].) It is pointed out in the Tutun case that in passing upon the application the court performs a judicial function. It exercises a legal as distinguished from a personal discretion. (*United States* v. *Hrasky,* 240 Ill. 560 [88 N. E. 1031, 130 Am. St. Rep. 288, 16 Ann. Cas. 279].) The court is not necessarily limited in its inquiry to events occurring within five years prior to the application. Section 399, Title 8, U. S. C. A., gives the United States the right to appear in the court proceeding for the purpose of cross-examining the applicant and his witnesses ''concerning any matter touch-

ing or in any way affecting his right to admission to citizenship", with the right to call witnesses, produce evidence, and be heard in opposition to the granting of the application. It has been stated that the alien's attachment to the principles of the Constitution of this country, his disposition concerning our theory of government, and his attitude and beliefs pertaining to organized government are the essence of the inquiry; that these are matters usually of growth and development, and that the condition or practices of the applicant during his previous life bear materially upon the truthfulness of the statements made by him. (*United States* v. *Bressi*, 208 Fed. 369.)

The question then is whether the facts elicited by the examination conducted before the trial court are sufficient upon which to base its denial of the application, and specifically whether such facts are sufficient to show that the applicant was not attached to the principles of the Constitution. The fact adverse to the positive showing presented by the applicant was his two years' subscription to the communist publication, which had expired more than five years prior to his application. There was no evidence that the alien was a member of the communist party at the time of his application or at any other time. (See *Schneiderman* v. *United States,* No. 9658, C. C. A. 9th Cir. April 28, 1941.) The examiner made the assertion before the trial court that his "confidential file" contained more of a nature unfavorable to the applicant, but he made no offer and the court did not require him to introduce such matter in evidence. The only reason apparent from the record for the order of denial was the fact that the applicant had read the communist party organ and this more than five years prior to the filing of the application. There was no inquiry into the effect which such reading might have had on the attitude of the applicant and no other evidence to rebut the showing by him of good character and record and his attachment to the principles of our Constitution and Government. The case of *United States* v. *Macintosh, supra,* at pages 616, 617, indicates the extent of the inquiry and showing deemed sufficient to justify an order denying the application. It was there said: "Clearly, it would seem, in order that the court and the government, whose power and duty in that respect these provisions take for granted, may discover whether the ap-

plicant is fitted for citizenship;—and to that end, by actual inquiry, ascertain, among other things, whether he has intelligence and good character; whether his oath to support and defend the Constitution and laws of the United States, and to bear true faith and allegiance to the same, will be taken without mental reservation or purpose inconsistent therewith; whether his views are compatible with the obligations and duties of American citizenship; whether he will upon his own part observe the laws of the land; whether he is willing to support the government in time of war, as well as in time of peace, and to assist in the defense of the country, not to the extent or in the manner that he may choose, but to such extent and in such manner as he lawfully may be required to do. These, at least, are matters which are of the essence of the statutory requirements, and in respect of which the mind and conscience of the applicant may be probed by pertinent inquiries, as fully as the court, in the exercise of a sound discretion, may conclude is necessary." The record herein fails to disclose the inquiry referred to in the Macintosh and other cases as necessary or desirable to serve as a basis for the exercise of the discretion of the court adversely to the application. The trial court is of course the best judge of the credibility of the witnesses and the weight of the evidence in this as in other cases. Nevertheless, the nature of the proceeding is such that to justify a denial there should be a showing which is the result of an independent inquiry by the court, or a report to the court by the examiner, with the opportunity afforded to the applicant to meet the same, as distinguished from an undisclosed investigation by the examiner prior to the hearing, and withheld from the court. Otherwise the discretion indulged by the court is an arbitrary and not a legal discretion.

We conclude that the record on the hearing of the application here presented does not meet the required test. A further inquiry and hearing, if requested, should be available to the parties.

The order is reversed.

Traynor, J., Curtis, J., Gibson, C. J., and Carter, J., concurred.

EDMONDS J., Dissenting.—In my opinion, there is substantial evidence in the record to support the finding of the

trial court that the appellant "is not attached to the principles of the Government of the United States." An alien has no right to citizenship unless he complies with the terms imposed by Congress (*United States* v. *Macintosh,* 283 U. S. 605 [51 Sup. Ct. 570, 75 L. Ed. 1302]), and the decisions in naturalization cases for the last 100 years are based upon the principle that the door to citizenship will not be thrown open to an alien unless he proves, to the satisfaction of the court, that he is attached to the principles of the Constitution of the United States. And attachment to our government means much more than a sympathy with or preference for the Constitution and laws of the United States; it implies devotion to those principles upon which our democratic institutions stand and a willingness to support them with more than lip service.

That devotion must, of course, be based upon a depth of conviction concerning law and order which cannot adequately be measured by perfunctory answers to questions framed in the language of the Naturalization Act. Through naturalization high political as well as civil privileges are conferred upon an alien. By it he is invested with most of the rights of a native born citizen. Whereas an alien is ineligible to vote, has no suffrage in public elections, and even in peace time is subject to various disabilities, citizenship confers important and valuable rights. These rights are merited by an alien only when he has complied with the terms which Congress imposes. "Citizenship is a high privilege and when doubts exist concerning the grant of it . . . they should be resolved in favor of the United States and against the claimant". (*Swan & Finch Co.* v. *United States,* 190 U. S. 143, 146 [23 Sup. Ct. 702, 47 L. Ed. 984] ; *United States* v. *Manzi,* 276 U. S. 463, 467 [48 Sup. Ct. 328, 72 L. Ed. 654].)

In the present case, there is evidence from which the court might well have concluded that the applicant is not attached to the principles of the Constitution but is sympathetic with the purposes of Communism. To disprove the evidence to that effect he offered no positive, frank or outspoken avowal of his attachment to the principles of our Government. His meager testimony came forth only in response to leading questions from his own counsel to the effect that he is "well disposed to the good order of the United States", and that he has not done "anything detrimental to the best causes and

interest of the Constitution, Government and laws of the United States'' and did not know anything which he had done for which he could be criticized.

A reading of the record reveals indisputably that the trial court might well be in doubt as to the sincerity and conviction of this testimony. Petitioner was obviously unwilling to submit to examination and he was represented by counsel who strenuously objected to many proper questions. It is significant that he failed to offer testimony expressly disavowing his attachment to the principles of Communism. Whether he has the attachment to the principles of this Government which is required by the Naturalization Act is a question which it was the duty of the trial court to determine. In reaching its conclusion the court was not limited to a consideration of the words of the applicant's answers. His attitude toward the court and the examination of him, as well as his frankness or evasion in answering questions should have been, and undoubtedly were, considered by the trial judge in passing upon his honesty of mind and intention.

A trial court is not always bound by the positive and uncontradicted testimony of a witness and this is particularly true where the witness is·an interested one and the issue concerns his attitude or state of mind. Unquestionably, under the decisions in naturalization cases, if the record in such a proceeding shows affirmatively that there is any substantial reason for the trial court to doubt whether the applicant is attached to the principles of our Constitution, its finding to that effect should be sustained upon appeal.

The test in any naturalization proceeding is whether the applicant is entitled to citizenship, with the purpose of excluding from citizenship persons disbelieving in our government or hostile to it. An applicant should be granted citizenship only when the court is satisfied that his citizenship will be beneficial to our country (*In re Sigelman,* 208 Fed. 217) and, as I read the record, the evidence presented by the appellant shows a person concerning whose allegiance there may reasonably be much more than a grave doubt.

For these reasons I believe that the judgment of the trial court should be affirmed.