STATE EX REL. WEISZ, RELATOR, v. DISTRICT COURT
ET AL., RESPONDENTS.

(No. 4,943.)

(Submitted October 26, 1921. Decided November 28, 1921.)

[202 Pac. 387.]

*Aliens — Naturalization — District   Courts — Jurisdiction —
Discretion—Unauthorized  Judgment—Certiorari.*

Aliens—Naturalization—Judicial   Proceeding—District   Courts—Jurisdiction.
   1.  The district courts of Montana possess concurrent jurisdiction with the federal courts (within the limitations prescribed by Act of Congress relating to the subject) to naturalize aliens, and therefore when such power is exercised by them, the proceeding is a judicial and not a political one, and hence the supreme court may, on *certiorari*, review a judgment rendered in such a proceeding.

---

1. On the question of jurisdiction of state courts over naturalization proceedings, see notes in **Ann. Cas.** 1915C, 428; 30 **L. R. A.** 761; 48 **L. R. A.** 36.

Same—Naturalization—Refusal—When Proper—Discretion.
  2.  It is within the discretion of courts to refuse to admit an alien to citizenship who affirms that he will not bear arms in defense of the government.

Same—Judgment Forever Denying Citizenship Unauthorized.
  3.  Held, on *certiorari*, that a judgment of the district court forever debarring an applicant for naturalization from citizenship is not authorized by the Act of Congress establishing rules for the naturalization of aliens (34 Stats. at Large, 596), and was therefore in excess of its jurisdiction.

Same—Naturalization—Appeal Does not Lie.
  4.  An appeal does not lie in this state from a judgment in naturalization proceedings.

*Certiorari*—Writ Lies, When.
  5.  *Certiorari* lies when jurisdiction has been exceeded and there is no appeal or other plain, speedy and adequate remedy.

Original application for Writ of Certiorari by the State, on the relation of Emanuel Weisz, against the District Court of the Sixteenth Judicial District of Montana for the County of Garfield and the Judges thereof.  Judgment modified.

*Mr. P. F. Leonard,* for Relator, submitted a brief and argued the cause orally.

Has this court jurisdiction?  The naturalization law (Act of June 29, 1906) makes no provision for an appeal from the judgment of the court on the application for citizenship.  In *State ex rel. Gorelick* v. *Superior Court, Kings Co., Wash.,* 75 Wash. 239, Ann. Cas. 1915C, 425, 134 Pac. 916, the court followed *United States* v. *Dolla,* 177 Fed. 101, 21 Ann. Cas. 665, 100 C. C. A: 521, and held that there was no appeal from the judgment.  The conflict as to the Act and the application thereof were mainly due to conditions existing prior to the Act of June 29, 1906.  The said Act and recent decisions have settled the apparent conflict.  In *Holmgren* v. *United States,* 217 U. S. 509, 19 Ann. Cas. 778, 54 L. Ed. 861, 30 Sup. Ct. Rep. 588 [see, also, Rose's U. S. Notes], it was held that Congress in the exercise of its constitutional authority could confer jurisdiction upon the state courts as to naturalization proceedings.  This jurisdiction the court says has existed since 1790, since the first naturalization law.  Congress does not confer any more jurisdiction on the federal courts than on the

state courts under the Act in question.   There is no conflict as to their jurisdiction as they have concurrent jurisdiction each independent of the other.   (See 15 C. J. 1152.)   It is undoubtedly true that if a right or privilege granted by the naturalization law and claimed by the relator should be denied him by the supreme court of the state of Montana, a writ of error would lie to the supreme court of the United States under section 237 of the Federal Judicial Code.   But such jurisdiction would be no different in a naturalization proceeding than in any other case or proceedings involving the constitution or laws of the United States.

*Mr. John L. Slattery,* United States District Attorney, *Mr. Ronal Higgins* and *Mr. W. H. Meigs,* Assistant United States District Attorneys, for Respondents, submitted a brief; *Mr. Higgins* argued the cause orally.

The government contends that the supreme court of Montana has no jurisdiction in naturalization.   Exclusive authority in naturalization is conferred upon Congress.   (Art. I, sec. 8, U. S. Const.)   In the exercise of that exclusive authority, Congress has regulated naturalization.   (Secs. 4351–4384, U. S. Comp. Stats. 1916, and amendatory Acts in 1919 Supp. Comp. Stats.; 34 Stat. 596.)   The matter of jurisdiction is governed by section 4351, Compiled Statutes (34 Stat. 596), as applying to state courts (sec. 4351.)

The supreme court does not exercise original jurisdiction in naturalization.   (Const., Art. VIII, sec. 2; *Ex parte McKenzie,* 51 S. C. 244, 28 S. E. 468; *Ex parte Knowles,* 5 Cal. 300.) Nor does the supreme court have appellate jurisdiction, as is evident from the powers granted it by the Constitution of Montana, let alone from the federal and state authorities to be cited.   The authority of state courts to naturalize aliens, as well as that of federal courts, emanates from Congress. All are, for the purpose of the naturalization statutes, federal courts.   (*United States* v. *Aakervik,* 180 Fed. 137; *Inhabitants of County of Hampden* v. *Morris,* 207 Mass. 167, Ann. Cas.

1912A, 815, 93 N. E. 579; *State ex rel. Gorelick* v. *Superior Court,* 75 Wash. 239, Ann. Cas. 1915C, 425, 134 Pac. 916; *Eldredge* v. *Salt Lake County,* 37 Utah, 188, 106 Pac. 939; *Matter of Christern,* 56 How. Pr. 5, 43 N. Y. Super. Ct. 523.)

Naturalization is a privilege and not a right. (*In re Buntaro Kumagai,* 163 Fed. 922.) It is to be granted upon the terms and conditions and by the methods provided by Congress. Congress has given to certain state and federal courts the discretionary power to grant or reject the petition of an alien for naturalization, and the orders of such courts made upon such petition are not subject to review by appeal or writ of error or at all. (*State ex rel. Gorelick* v. *Superior Court,* 75 Wash. 239, Ann. Cas. 1915C, 425, 134 Pac. 916.)

From the case last cited it may be deduced that the supreme court of Montana has no jurisdiction to compel action by a district court sitting as a naturalization tribunal, and it naturally follows further that if this court cannot compel, it cannot curb or modify action taken by a district court, exercised in naturalization by virtue of authority granted by Congress. (See, also, *Eldredge* v. *Salt Lake County,* 37 Utah, 188, 106 Pac. 939; *In re Goodman,* 178 N. Y. Supp. 499.) Until the decision in the case of *United States* v. *Dolla* (1910), 177 Fed. 101, 21 Ann. Cas. 665, 100 C. C. A. 521, taken up on a writ of error by the United States, the right of review in naturalization cases by an appellate court was never seriously questioned. The holding in this case, which is a leading one, was that the action of the lower court having jurisdiction to naturalize aliens, is not subject to review by writ of error or otherwise to the circuit court of appeals, because the naturalization law of 1906 provides no method of review by higher courts; nor do naturalization matters come within the purview of sections 5 and 6 of the Circuit Court of Appeals Act, the word "case" in section 6 of the Act not meaning a naturalization hearing. It was further held that the naturalization of an alien is a political and not a judicial act; that the power to naturalize could have been conferred by

Congress· on some other agency than a court, the Department of Labor, for example.

The only method provided for attacking the findings of a court in naturalization is provided by section 4374, Compiled Statutes of 1916 (34 Stat. 601), and then only on the part of the government by suit to cancel on the grounds of fraud or illegality. This single method was supplied designedly by Congress, and the section of the bill before that body providing for an appeal from the decisions of lower courts was intentionally stricken. (40 Cong. Rec., pp. 7784–7787. See, also, Report of Special Commission on Immigration appointed by the President March 1, 1905 [59th Cong., 1st Sess., Dec. 46, p. 26].) Congress in the naturalization statute of 1906 was correcting the evils resulting from a too easy acquisition of American citizenship. Yet in certain instances, even the government is foreclosed by the decision of a state court acting as a court of naturalization. (*United States* v. *Ness,* 245 U. S. 319, 62 L. Ed. 321, 38 Sup. Ct. Rep. 118.) This latter case is the final word upon the question as to the lack of jurisdiction in this court to issue a writ of review to a district court sitting as a court of naturalization.

MR. CHIEF COMMISSIONER POORMAN prepared the opinion for the court.

Original application for *certiorari.* At the hearing on relator's petition for admission as a citizen of the United States, the district court, after finding "that petitioner will not bear arms in defense of the United States," made and entered the following judgment: "Said petition is hereby denied with prejudice, and [petitioner is] forever debarred from citizenship and declaration held invalid."

The claim made by the relator is that the district court exceeded its jurisdiction in including in the judgment the phrase "forever debarred from citizenship." A writ of review was issued by this court commanding the district court to certify and send to this court a transcript of the record and

proceedings had at the hearing on relator's petition to become a citizen. The respondents appeared and moved to quash the writ so issued upon the grounds that this court has no jurisdiction of the subject matter; that a district court sitting as a naturalization court acts through courtesy and assumes the same status as a federal court in naturalization matters; that the admission of an alien to citizenship is a political, not a judicial act; that no right of relator has been violated; that the petition does not state facts sufficient to entitle the relator to any relief.

The objections made by respondents in their motion to quash **[1]** all have reference to the jurisdiction of this court. Congress alone has power to establish rules for naturalization (Art. I, sec. 8, U. S. Const.), but the Congress has from the very beginning conferred authority upon state courts to hear and finally determine applications for citizenship. The present law is contained in the Act of June 29, 1906 (34 Stats. at Large, 596). As early as 1792 the United States supreme court said: "State courts possess concurrent authority with federal courts to naturalize aliens, but such authority of the state court cannot be exercised so as to contravene the Acts of Congress." (*Collet* v. *Collet,* 2 Dall. (U. S.) 294, 1 L. Ed. 387; see 2 Cyc. 111; *Holmgren* v. *United States,* 217 U. S. 509, 516, 19 Ann. Cas. 778, 54 L. Ed. 861, 30 Sup. Ct. Rep. 588 [see, also, Rose's U. S. Notes]; 6 Fed. Ann. Stats. 938.)

"The power to naturalize an alien is a judicial power; consequently proceedings for naturalization are judicial proceedings to be exercised by the courts." (2 Cyc. 113.) The power is tendered by Congress. The consent of the state to accept and act on that power is conferred on the state courts by the state Constitution. (Sec. 11, Art. VIII, Mont. Const.) The authority to naturalize is thus by the Act of Congress brought within the jurisdiction of the state court, and the judgment rendered is that of a state court acting within the limits of the authority conferred by Congress and accepted by the state. And when this power is exercised by a state court it is a

judicial proceeding. It is not the report of a federal agent nor the conclusion of a magistrate. This judgment is recognized by the federal authority as *res adjudicata* and final. (*United States* v. *Gleason* (C. C.), 78 Fed. 396, 6 Fed. Ann. Stats. 938 *et seq.*)

In a naturalization proceeding the question presented to the court is contained in the petition *then* before the court, not in some other petition thereafter to be filed or tendered for filing. It is a statutory proceeding, and the court cannot go beyond the statute. "An alien who seeks political rights as a member of this nation can rightfully obtain them only upon terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications. Their duty is rigidly to enforce the legislative will in respect to a matter so vital to the public welfare." (*United States* v. *Ginsberg*, 243 U. S. 472, 61 L. Ed. 853, 37 Sup. Ct. Rep. 422.)

A court is certainly not transcending its discretionary power [2] when it refuses to admit to citizenship an alien who affirms that he will not support the government, and this would apply to any petition filed if the same conditions existed.

The phrase "with prejudice" appearing in the judgment can [3] only mean that the judgment is final as to the petition then before the court. But the phrase "forever debarred from citizenship" is not authorized by the Act of Congress. The question as to whether the relator has the right under the federal law to file another petition is not involved in this hearing. Federal courts have considered that question. (6 Fed. Ann. Stats. 938 *et seq.; In re Centi* (D. C.), 217 Fed. 833; *In re Guliana* (D. C.), 156 Fed. 420.) If this statute does not deny to the petitioner the right to file another petition in the future, the court cannot deprive him of that right or prejudge the petition when filed or tendered for filing. And if no such right is now given, it is within the power of Congress to enact a statute which does give it. This judgment on its face is a perpetual bar to the exercise of any such right, and in effect a denial of the power of Congress, and to that extent the phrase

complained of in the judgment is not authorized by the Act of Congress.  This is sufficient to call into requisition the action of this court if it has jurisdiction to act at all with reference to judgments in this class of cases.

The relator does not take issue with the judgment of the district court, in so far as it denies his application to become a citizen, but admits the legal discretionary power of the court to approve or deny his application.  The judgment denying the application stands.  The objection is directed solely to that part of the judgment which forecloses the future to him. **[4]**  Whatever may be the rule in other jurisdictions, there is not any appeal from judgments in naturalization proceedings in this state.  And that is the rule announced in other states having similar statutes.  (*State ex rel. Gorelich* v. *Superior Court, Kings County, Wash.,* 75 Wash. 239, Ann. Cas. 1915C, 425, 134 Pac. 916.  See, also, *United States* v. *Dolla,* 177 Fed. 101, 21 Ann. Cas. 665, 100 C. C. A. 521.)  However, the supreme court of Illinois did entertain an appeal by the government, and reversed a judgment admitting an alien to citizenship. (*United States* v. *Hrasky,* 240 Ill. 560, 130 Am. St. Rep. 288, 16 Ann. Cas. 279, 88 N. E. 1031.)

We then have a final judgment rendered by a state court, sitting under authority of the state Constitution, acting in a case brought before it and within its jurisdiction by Act of Congress, containing a command not necessary to the determination of the issue then before the court, and not authorized by any law, state or federal, and clearly in excess of its jurisdiction. It is certainly not within the meaning of the Act of Congress that a court may prescribe additional qualifications to become a citizen of the United States or to foreclose any subsequent legislation by Congress, either prescribing additional qualifications or omitting those now existing.

It has been held by this court that *certiorari* will not lie, **[5]**  unless it appears that jurisdiction has been exceeded, that there is no right of appeal, and that there is no other plain, speedy, and adequate remedy.  (*State ex rel. Weinstein*

*Co.* v. *District Court,* 28 Mont. 445, 72 Pac. 867.)  All these requisites are present in the instant case.  The provisions of the state Constitution and of the statute which clearly confer power upon this court to grant relief in cases of this kind are so clearly and exhaustively analyzed and discussed in *Finlen* v. *Heinze,* 27 Mont. 107, 69 Pac. 829, 70 Pac. 517, that further comment is unnecessary.

We recommend that the judgment complained of be modified by striking out the clause complained of, namely, "forever debarred from citizenship."

PER CURIAM: For the reasons given in the foregoing opinion, it is ordered that the judgment complained of be modified by striking out the clause complained of, namely, "forever debarred from citizenship."

*Modified.*

