THE STATE, ALBERT RUSHWORTH v. THE JUDGES OF THE INFERIOR COURT OF COMMON PLEAS OF HUDSON COUNTY.

1. Congress is without power to interfere with or control state courts, except in so far as the federal courts have appellate jurisdiction.
2. Congress cannot, without the consent of the state, constrain the state courts to entertain or act upon applications for naturalization.
3. It is competent for the state legislature to prescribe and limit the times when and during which such applications may be heard in the state courts.

On application for *mandamus.*

Argued at June Term, 1895, before Justices VAN SYCKEL and LIPPINCOTT.

For the relator, *William D. Daly* and *John P. Stockton,* Attorney-General.

The opinion of the court was delivered by

VAN SYCKEL, J. An act of the legislature passed March 26th, 1895, entitled "An act concerning naturalization and regulating procedure in cases of naturalization in courts of this state, and establishing uniform fees for clerks and judges

in naturalization cases," provides, among other things, that "no person shall hereafter be naturalized or admitted to be a citizen of the United States by any court of this state within the thirty days next preceding any national, state, municipal, general, special, local or charter election."

The relator was refused naturalization by the Hudson county Pleas, solely upon the ground that his application was made within thirty days next preceding the election for municipal officers in the town of West Hoboken.

The only question submitted to the judgment of this court is, whether the above recited provision of the act of 1895 is constitutional.

The federal constitution provides that "congress shall have power to establish a uniform rule of naturalization, and uniform laws on the subject of bankruptcies throughout the United States."

Judge Story, in his *Commentaries on the Constitution, vol.* 2, § 1104, says: "It follows from the very nature of the power, that to be useful, it must be exclusive; for a concurrent power in the states would bring back all the evils and embarrassments which the uniform rule of the constitution was designed to remedy, and accordingly, though there was a momentary hesitation, when the constitution first went into operation, whether the power might not still be exercised by the states, subject only to the control of congress, so far as the legislation of the latter extended as the supreme law, yet the power is now firmly established to be exclusive."

Mr. Hamilton, in the "Federalist" (No. 32), says that the power given to congress to establish a uniform rule of naturalization throughout the United States must necessarily be exclusive, because if each state had power to prescribe a distinct rule, there could be no uniform rule.

It is entirely settled that no state can pass naturalization laws. *Houston* v. *Moore*, 5 *Wheat.* 1, 48; 1 *Kent Com.*, § 424.

The United States statute provides for the naturalization of aliens by application to a Circuit or District Court of the United States, or a District Court or Supreme Court of the

territories, or a court of record of any of the states having common-law jurisdiction and a seal and clerk. The United States government has thus selected the state courts as one of its agencies to hear and act upon applications for naturalization.

While it must be conceded that the state can pass no law which regulates the subject of naturalization, or the order of business in the federal courts, the solution of the controversy in this case, in my judgment, turns upon the question whether the state may not regulate the order of business in its own courts in relation to this subject, or refuse altogether to permit its courts to entertain applications for naturalization."

Article 3, section 2, of the federal constitution provides "that the judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States and the treaties made or which shall be made under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states; between a state and citizens of another state; between citizens of the same state claiming lands under grants of different states, and between a state or the citizens thereof, and foreign states, citizens or subjects."

Whether congress can permit the state courts to exercise jurisdiction over any of these subjects, has been a source of much controversy. *Martin* v. *Hunter*, 1 *Wheat.* 304.

Mr. Justice Washington, in *Houston* v. *Moore*, 5 *Wheat.* 1, 27, said that "he held it to be perfectly clear that congress cannot confer jurisdiction upon any courts but such as exist under the constitution and laws of the United States; although the state courts may exercise jurisdiction in cases authorized by the laws of the state, and not prohibited by the exclusive jurisdiction of the federal courts."

In *Martin* v. *Hunter, supra,* this was accepted as a correct exposition of the constitution, and the court in that case denied that congress could vest any portion of the judicial power of

the United States, except in courts ordained and established by itself.

The contrary view was deemed irreconcilable with the context of the constitution—" the judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as congress may from time to time ordain and establish."

The conclusion to be drawn from these declarations of the federal courts, I think, must be that congress is without power to interfere with or control state courts, except in so far as the federal courts have appellate jurisdiction. It is immaterial to consider whether the granting of naturalization is strictly a judicial function. If congress has, without the consent of the state, the power to impose such a duty upon the state courts, there is no legal limit to the authority of the national legislature to burden the state courts with such a volume of business as to essentially impair their capacity to exercise the judicial functions for which they were created by the state.

The inability of congress thus to fetter and disable the instrumentalities provided by the state for carrying on the operations of its own government, was the ground upon which the power of the federal government to lay an income tax upon the salaries of the state judiciary was denied in *Collector* v. *Day*, 11 *Wall.* 113.

Chancellor Kent, in his *Commentaries*, says that in *Houston* v. *Moore*, 5 *Wheat.* 1, the Supreme Court disclaimed the idea that congress could authoritatively bestow judicial powers on state courts. In that case it is said that it is perfectly clear that congress cannot confer jurisdiction upon any courts but such as exist under the constitution and laws of the United States, although the state courts may exercise jurisdiction in cases authorized by the laws of the state and not prohibited by the exclusive jurisdiction of the federal courts.

The learned author declares that in the case last cited, the judges of the Supreme Court very clearly intimated that the state courts were not bound in consequence of any act of con-

gress to assume and exercise jurisdiction in such cases, and he regards the doctrine as well founded that congress cannot compel a state court to entertain jurisdiction in any case. 1 *Kent Com.* 399, 400, 402.

Such has been the view adopted by state courts, where the question has been involved. *Haney* v. *Sharp,* 1 *Dana (Ky.)* 442; *Ex parte Pool, Va. Cas.* 276.

The national courts have recognized their want of authority in cases not within the appellate jurisdiction of the United States, to issue injunctions to the state courts, or in any other manner to interfere with their jurisdiction or proceedings. *Diggs* v. *Wolcott,* 4 *Cranch* 179.

"The powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively or to the people." *U. S. Const. Amend., art.* 10.

There has been no surrender by the states of the right to establish their own courts, to define and limit their jurisdiction and functions, and to regulate and control them in all respects, except as to appellate jurisdiction, and as to subjects within the exclusive jurisdiction of the United States.

The state establishes its own courts, defines their jurisdiction, appoints its judges and pays their salaries.

Whether the judges of the state courts shall act in applications for naturalization, or execute any other like authority with which they may be lawfully invested, is, in my opinion, exclusively within and subject to the will of the legislative branch of the state government.

My conclusion therefore is, that it is competent for the state legislature to forbid state courts altogether to entertain or act upon applications for naturalization, and therefore it could lay any restraint, regulation, limitation or condition upon the practice in such cases which it might deem expedient or proper.

No right is claimed or could be conceded, on behalf of the state, to interfere in any respect with the subject of naturalization in the federal courts.

This inability on the part of the federal government to con-

strain the state courts to act, in nowise impairs the exclusive power of the United States over the subject of naturalization.

The power of congress to create inferior courts and such other agencies as it may deem necessary for the complete exercise of this branch of its exclusive authority is not circumscribed.

In my judgment, it was within the power of the state legislature to pass that section of the act which has given rise to this discussion, and the application for a writ of *mandamus* to the court below must be refused, with costs.