[No. 11324. Department One. September 4, 1913.]

THE STATE OF WASHINGTON, *on the Relation of Meyer Gorelick, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent.*[1]

ALIENS—NATURALIZATION—JURISDICTION—STATE COURTS. In naturalization proceedings under authority of acts of Congress, state courts act as agencies of the national government, and are controlled exclusively by Federal law.

SAME—JURISDICTION—CONSTITUTIONAL PROVISIONS. Const., art. 4, § 6, providing that superior courts "shall have the power of naturalization" does not confer jurisdiction in naturalization proceedings, independent of Federal law.

SAME—PROCEEDINGS—RIGHT TO APPEAL. Under Act of Congress of 1906, 34 Stats. at Large, p. 596, conferring jurisdiction upon state courts to naturalize aliens, there is no right of appeal; and no appeal lies to the state supreme court in the absence of express statutory authority.

Application filed in the supreme court June 17, 1913, for a writ of mandamus to compel the superior court for King county, Frater, J., to settle and certify a statement of facts. Denied.

*Thos. R. Horner* and *R. B. Brown,* for relator.

*John F. Murphy, Robert H. Evans,* and *Charles F. Riddell,* for respondent.

PARKER, J.—This is an original proceeding in this court wherein the relator, an alien, seeks a writ of mandate to com-

[1]Reported in 134 Pac. 916.

pel the settlement and certification of a statement of facts by Judge Frater of the superior court for King county, in aid of an appeal which the relator is attempting to prosecute from the decision of that court denying his application to become a citizen of the United States.

The argument of counsel upon both sides proceeds upon the theory that the relator's right to the relief he here seeks depends upon whether there is any right of appeal to this court from the decisions of the superior courts, rendered in naturalization proceedings had in those courts in pursuance of the laws of the United States. We therefore give no attention to the right of the relator to have settled and certified a statement of facts aside from his claimed right of appeal.

It is provided by art. 1, § 8, of the constitution of the United States, that "The congress shall have power, . . . To establish an uniform rule of naturalization." Laws enacted by Congress in pursuance of this power have been in existence since near the beginning of our national life, conferring power of naturalization upon state courts as well as upon Federal courts. The last enacted general law upon this subject is that of 1906 (34 Stats. at Large, part 1, p. 596). It gives this power to state courts in the following language:

"Sec. 3. That exclusive jurisdiction to naturalize aliens as citizens of the United States is hereby conferred upon the following specified courts: . . . also all courts of record in any state or territory now existing, or which may hereafter be created, having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited."

This is followed by provisions prescribing in considerable detail the conditions under which aliens may become citizens, and also the procedure to be followed by the courts in citizenship proceedings. The force of Federal naturalization statutes enacted in pursuance of this uniform rule of the Federal constitution, it has been held by this court, extends even

to the amount of fees chargeable by the clerks of the superior court for services rendered by them in naturalization proceedings, to the exclusion of state legislation upon the subject of fees. *State ex rel. Newman v. Libby*, 47 Wash. 481, 92 Pac. 350. The capacity in which state courts act in naturalization proceedings is well stated by Justice Frick in *Eldredge v. Salt Lake County*, 37 Utah 188, 106 Pac. 939, as follows:

"It seems to us too obvious to require either argument or the citation of authorities that in naturalization proceedings the United States government exercises sovereign functions which exclusively belong to that government, and, further, that, in authorizing the state courts to act in such proceedings, the national government selects such courts and the clerks thereof as government agencies through whom said government is discharging one of its peculiar functions of national sovereignty. Whatever may have been the theory of some courts regarding the power of Congress to confer such authority upon the state courts in the past, the question is now settled that Congress has such power, and that state courts may constitutionally exercise the same when authorized by Congress to do so. Among other cases, we refer to the following: *Levin v. United States*, 128 Fed. 826, 63 C. C. A. 476; *Robertson v. Baldwin*, 165 U. S. 275, 17 Sup. Ct. 326, 41 L. Ed. 715; *State v. Libby*, 47 Wash. 481, 92 Pac. 350. The question as to whether the state courts continue or cease to be state courts while acting in naturalization cases, while interesting, is not material. It is enough for the present to know that in so doing such courts are merely agencies of the national government."

It is true that our state constitution in § 6, art. 4, provides that superior courts "shall have the power of naturalization." This, however, was regarded by this court in *State ex rel. Newman v. Libby, supra,* as simply an expression of consent on the part of the state that its superior courts might exercise that power in conformity to Federal law, rather than as an attempt to confer jurisdiction on the superior courts independent of Federal law. This power, being one to be exercised as a function of the national government, and gov-

erned by rules required by the Federal constitutional pro-
vision above quoted to be uniform, it seems to us to follow
that the state courts must of necessity be controlled in their
methods of procedure, as well as in their determination of the
rights of applicants for citizenship, by laws enacted by Con-
gress. Indeed, upon no other theory could the rule of uni-
formity be maintained. It also seems plain to us that the
question of what courts have jurisdiction in naturalization
proceedings, whether original or appellate, must be deter-
mined by the laws enacted by Congress. To hold otherwise
would be to ignore the requirements of the "uniform rule"
found in the Federal constitution. The judgments of United
States courts in citizenship proceedings have, on a few oc-
casions since the passage of the act of 1906, been reviewed in
the appellate courts; but not until the decision in the case of
*United States v. Dolla*, 177 Fed. 101, has such review in an
appellate court by error or appeal been challenged. In that
case, after a review of the provisions of the act of 1906 and
noting, among other things, the fact that it makes no pro-
vision for appeal, and also noting the provisions of the gen-
eral statute allowing review of cases by that court, the stat-
ute referring to "all cases" with certain exceptions, the court
said:

"Under the naturalization law of June 29, 1906, the juris-
diction is conferred upon the courts, the petition for natural-
ization is to be filed addressed to the court, notice is to be
given by posting, witnesses may be summoned, the United
States are given the right to appear and oppose and call wit-
nesses, every final hearing shall be had in open court before
a judge or judges, and final orders are to be under the hand
of the court and entered of record   Under the first natural-
ization act (Act March 26, 1790, c. 3, 1 Stat. 103), juris-
diction was conferred upon state courts only, but since 1802
it has been extended to District and Circuit Courts of the
United States. Naturalization has always been an act or
judgment of a court, but never until the act of 1906 has it
been suggested that the special proceedings authorized con-
stituted a case, action, or cause that could be reviewed on

writ of error, under any judiciary act, state or Federal. If, by the additional provisions and restrictions with which naturalization is guarded by the act of 1906, an application for naturalization is made a case within the meaning of section 6 of the Courts of Appeals Act of 1891, then it must follow that all applications for naturalization in all courts, state and federal, are reviewable by appeal or writ of error, as the several judiciary acts may read, at the suit of the rejected applicant or the United States.

"We may say, further, if naturalization proceedings under the act of 1906 constitute a 'case' it is a case at law, not in equity nor in admiralty; and if such a case is reviewable under present laws it can only be on writ of error, and only errors of law appearing of record can be reviewed. It is unnecessary to point out that such review would be fruitless in all cases where the forms provided by the law are followed. Any review of naturalization proceedings in an appellate court, to be worth while, must be a review of the facts as well as law, and this can only be on appeal, and an appeal must be provided by statute. As the act of 1906 is silent with regard to any appeal or writ of error, while sedulous in placing guards and restrictions around the proceedings and fully protecting the United States by authorizing a suit to annul any certificate fraudulently obtained or improperly granted, it is not to be supposed that it was the intention of the said act to make a reviewable case of every application for naturalization. The mischief to be remedied was not in that line, but was the hasty or improvident way in which many of the courts under the prior laws naturalized aliens without examination and proper proof. Naturalization of aliens is an act of grace, not right, and it is not necessarily a business of the courts. It is lodged in the courts for convenience, and, at the pleasure of Congress, can be taken entirely away and lodged in the Bureau of Commerce and Labor, which is now charged with supervision of the operations under the act, or with any executive officer, as is now lodged the right and power to determine whether certain aliens shall be permitted to come into the country at all. See *Lee Lung v. Patterson*, 186 U. S. 168, 22 Sup. Ct. 795, 46 L. Ed. 1108. If naturalization is a judicial act it is because done by judges.

"We therefore conclude that the action and proceedings of the District Court on Abba Dolla's petition for naturaliza-

tion did not constitute a 'case' within the meaning of the sixth section of the judiciary act of 1891, and this court is without jurisdiction to review the same.

"The same conclusion may be reached on another line. The admission of an alien to citizenship is not only a political act of grace, but the power vested in the court to grant or order the same is on proof to the satisfaction of the court, with the petitioner and witness as necessary exhibits—that is to say, the question of admission is committed to the discretion of the courts—and discretionary rulings of courts are not reviewable on error or appeal, except, perhaps, when the discretion is shown to have been abused, and abuse of discretion in naturalization cases is provided for in section 15 of the act of 1906, not by error or appeal, but by a direct suit to annul and cancel."

In the following cases, Federal appellate courts did assume to review decisions in naturalization proceedings: *United States v. Rodiek*, 162 Fed. 469; *United States v. George*, 164 Fed. 45; *United States v. Martorana*, 171 Fed. 397; and *United States v. Daly*, 32 App. D. C. 525; but in none of these cases was the right of review, or the jurisdiction of the appellate court, challenged. In the case of *United States v. Breen*, 135 App. Div. 824, 120 N. Y. Supp. 304, an appellate division of the supreme court of that state entertained an appeal in a naturalization proceeding, and expressed the view, but without discussion, that the right of appeal existed in such cases, resting its decision in that regard upon the Federal cases last above cited. It is worthy of note, however, that the supreme court affirmed the lower court, leaving the judgment undisturbed. In *State ex rel. Rushworth v. Judges of Inferior Court of Common Pleas*, 30 L. R. A. 761, may be found an interesting and somewhat exhaustive note touching the power of state courts in naturalization proceedings. That note, however, was compiled prior to the enactment of the naturalization law of 1906.

In view of the fact that the superior court acts in naturalization proceedings solely as an agency of the national government, we think such proceedings must be controlled ex-

clusively by Federal law, both as to procedure and substantive law touching the rights of a person seeking citizenship. We are unable to see how an appellate court of the state can acquire appellate jurisdiction in such proceedings any more than could an appellate court of the United States. It seems to us that the decision in *United States v. Dolla, supra,* is decisive of this question against the relator's contentions. We conclude that there is no appeal in such proceedings.

The writ is denied.

FULLERTON, MOUNT, GOSE, and CHADWICK, JJ., concur.