[Civ. No. 2431.  Third Appellate District.—May 27, 1922.]

In the Matter of the Application of PETER JULES WILKIE for Naturalization.

[1] NATURALIZATION—JUDGMENT—APPEAL.—A judgment in citizenship proceedings is not subject to review by courts of appeal, since the act of Congress of June, 1906, providing for the naturalization of aliens, does not authorize an appeal from such a judgment.

APPEAL from an order of the Superior Court of Sacramento County denying an application for naturalization. J. E. Prewett, Judge Presiding.  Appeal dismissed.

The facts are stated in the opinion of the court.

Soren X. Christensen and O. N. Hilton for Appellant.

John T. Williams and T. J. Sheridan for Respondent.

HART, J.—The petitioner, a native of Scotland and a subject of Great Britain, appeals from an order or judg-ment of the superior court in and for the county of Sacramento denying his application to become a naturalized citizen of the United States.

The ground upon which the appeal is predicated is that the court below, in passing upon the evidence, abused its discretion in denying the application.

*In limine,* the respondent, United States of America, through the United States district attorney for the northern district of California, has filed a motion to dismiss the appeal upon the following grounds: "First, that the court has no jurisdiction of said appeal; second, that the order attempted to be appealed from is not an appealable order; third, that under the acts of Congress, providing for the naturalization of aliens and authorizing a petition for naturalization to be heard by state courts of record, it is not contemplated or authorized that any appeal be taken from any order made by any state court or United States district court in the premises."

[1] The three grounds above stated involve practically the same proposition, to wit: That an order or judgment of any court, vested with jurisdiction to hear and determine such matters, denying the application of an alien to become, by proceedings in naturalization under the act of Congress of 1906 (c. 3592, 34 Stats. at Large, 596; U. S. Comp. Stats. Supp. 1911, p. 529 [6 Fed. Stats. Ann., 2d ed., p. 952; U. S. Comp. Stats., sec. 4351]), a citizen of the United States is not an appealable order or judgment, and this by virtue of the fact that the said act of Congress does not authorize an appeal from such an order or judgment; that, therefore, there is no authorized means whereby an appellate court may be clothed with jurisdiction to review proceedings in naturalization which have culminated in an order or judgment either denying or allowing an application for citizenship.

The cases in which the act of Congress of June, 1906, has been considered and construed sustain the contention thus advanced by the respondent upon reasons which appear to be sound and quite impregnable.

Section 8, article I, of the federal constitution provides that "the Congress shall have power . . . to establish an uniform rule of naturalization." In obedience to the power thus expressly conferred upon the Congress, naturalization laws were enacted at a very early stage after the organization of the federal government by the adoption of the national constitution and have, as modified or amended from time to time in certain particulars, since remained in existence. Down to the time of the enactment of the act of Congress of 1906, and, in a few instances even after the passage of that act, judgments of United States courts in naturalization proceedings have been reviewed by the appellate courts, and the right to such a review was never questioned, so far as we are contrariwise advised, until the decision in the case of *United States* v. *Dolla,* 177 Fed. 101 [21 Ann. Cas. 665, 100 C. C. A. 521]. In that case, the congressional legislation of 1906, authorizing the naturalization of aliens and prescribing the procedure in such proceedings, to which, it may here be suggested, new rules, designed for the more effectual safeguarding of the country against the admission of undesirable foreigners to the rights of citizenship therein, were added by said act, was elaborately reviewed. In said act of Congress no right of appeal from a judgment in citizenship proceedings was expressly granted or authorized, and it was held, in the case just mentioned, that the omission to provide in said act for an appeal in such proceedings was by the Congress thus intended, *ex industria,* to deny or foreclose such right. The reasoning of the court, in supporting its conclusion, is so forceful and so plainly unimpeachable and the question to which it is addressed of such singular importance at the present time, that we may pardonably reproduce herein an extended excerpt from the court's opinion as follows:

"Under the naturalization law of June 29, 1906, the jurisdiction is conferred upon the courts; the petition for naturalization is to be filed addressed to the court; notice is to be given by posting; witnesses may be summoned; the United States are given the right to appear and oppose and

call witnesses; every final hearing shall be had in open court
before a judge or judges; and final orders are to be under
the hand of the court and entered of record. Under the
first naturalization act (Acts March 26, 1790, c. 3, 1 Stat.
103), jurisdiction was conferred upon state courts only, but
since 1802 it has been extended to district and circuit courts
of the United States. Naturalization has always been an
act or judgment of a court, but never until the act of 1906
has it been suggested that the special proceedings authorized
constituted a case, action, or cause that could be reviewed on
writ of error, under any judiciary act, state or federal. If,
by the additional provisions and restrictions with which nat-
uralization is guarded by the act of 1906, an application for
naturalization is made a case within the meaning of section
6 of the Courts of Appeals Act of 1891, then it must follow
that all applications for naturalization in all courts, state
and federal, are reviewable by appeal or writ of error, as
the several judiciary acts may read, at the suit of the re-
jected applicant or the United States. We may say, fur-
ther, if naturalization proceedings under the act of 1906,
constitute a 'case,' it is a case at law, not in equity nor in
admiralty; and if such a case is reviewable under present
laws it can only be on writ of error, and only errors of law
appearing of record can be reviewed. It is unnecessary to
point out that such review would be fruitless in all cases
where the forms provided by the law are followed. Any
review of naturalization proceedings in an appellate court,
to be worth while, must be a review of the facts as well as
law, and this can only be on appeal, and an appeal must be
provided by statute. As the act of 1906 is silent with re-
gard to any appeal or writ of error, while sedulous in plac-
ing guards and restrictions around the proceedings and
fully protecting the United States by authorizing a suit to
annul any certificate fraudulently obtained or improperly
granted, it is not to be supposed it was the intention of the
said act to make a reviewable case of every application for
naturalization. The mischief to be remedied was not in that
line, but was the hasty or improvident way in which many
of the courts under the prior laws naturalized aliens with-
out examination and proper proof. Naturalization of aliens
is an act of grace, not right, and it is not necessarily a busi-
ness of the courts. It is lodged in the courts for con-

venience and, at the pleasure of Congress, can be taken entirely away and lodged in the Bureau of Commerce and Labor, which is now charged with supervision of the operations under the act, or with any executive officer, as is now lodged the right and power to determine whether certain aliens shall be permitted to come into the country at all. (See *Lee Lung* v. *Patterson*, 186 U. S. 168 [46 L. Ed. 1108, 22 Sup. Ct. Rep. 795, see, also, Rose's U. S. Notes].) If naturalization is a judicial act it is because done by judges. We therefore conclude that the action and proceedings of the district court on Abba Dolla's petition for naturalization did not constitute a 'case' within the meaning of the sixth section of the judiciary act of 1891, and this court is without jurisdiction to review the same.''

In *United States* v. *Neugebauer*, 221 Fed. 938 [137 C. C. A. 508], the United States circuit court followed the above decision, and denied the right of appeal by the government from a judgment of the United States district court admitting said Neugebauer to citizenship.

In *United States* v. *Ness*, 245 U. S. 319 [62 L. Ed. 324, 38 Sup. Ct. Rep. 118], the United States supreme court declared that an appeal will not lie in a naturalization proceeding. It is true that the question did not come before that court directly in that case, which was a suit to secure a decree canceling a certificate of naturalization issued to Ness by an Iowa state court upon the ground that the same was procured by fraudulent representations and means. However, the court took occasion to say in that case: ''Opposition to the granting of a petition for naturalization may prevail, because of objections to the competency or weight of evidence or the credibility of witnesses, or mere irregularities in procedure. A decision on such minor questions, at least of a state court of naturalization, is, though clearly erroneous, conclusive even as against the United States if it entered an appearance under section 11. For Congress did not see fit to provide for a direct review by writ of error or appeal. But where fraud or illegality is charged, the act affords, under section 15, a remedy by an independent suit 'in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit.' ''

It will be interesting, as in confirmation of the view expressed in *United States* v. *Dolla, supra,* that provision for appeal was purposely or designedly omitted from the naturalization act of 1906, to note the following brief history of the legislation in question as given in the foot-notes of *United States* v. *Ness, supra:* "The bill submitted by the Commission on Naturalization provided for such appellate proceedings, and its proposal was recommended to the House by the Committee on Immigration and Naturalization as section 13 (Report of Feb. 6, 1906, p. 5); but after debate in the Committee of the Whole (40 Cong. Rec., pp. 7784–7787) was stricken from the bill. The bill proposed by the commission and recommended by the House Committee contained in addition (as sec. 17) the provision for cancellation proceeding enacted as section 15."

But, while it is not denied by the petitioner here that the rule as confirmed by the more recent decisions construing the act of Congress of 1906 is that there is no appeal in citizenship proceedings had in the federal courts, it is, nevertheless, contended that the government, having invoked the aid of the state courts of general jurisdiction (which are courts of record, having seals), in the matter of the administration of naturalization laws, concedes to such state courts the right to follow their own procedure, and, to the applicant before the state court (for naturalization) the guarantee of due process of law, which includes all the processes whereby a litigant citizen's rights may be finally and definitively determined. In other words, the claim is that (and we now appropriate petitioner's own language), "if the applicant is denied a fundamental right in proceedings which culminated in an opinion or judgment, the opinion or judgment is infected with the same infirmity and the method of review provided for such judgment is a part of due process of law." Hence, so it is argued, "the review provided by the state of California by appeal is a part of the due process of law."

It would seem that a sufficient answer to the contention thus stated is to be found in the language itself of the fourth subdivision of section 8 of article I of the federal constitution that Congress shall have power "to establish an *uniform* rule of naturalization." This language, it seems to us, can mean nothing less than that the administration of the

law or laws governing the naturalization of aliens must be uniform or the same in all the tribunals to which the Congress has specifically intrusted that duty—that is to say, the proceedings must be conducted, whether in a state or a federal court, according to the rules promulgated by the statute itself and not according to the rules of procedure in state courts, where the proceedings are had before the latter court. But this proposition has been directly passed upon by the courts of several state jurisdictions, and by those courts it is held that, in committing to state courts of record the duty or the right of hearing applications for naturalization, Congress thus merely employed said courts as agencies through which the general government "is discharging one of its peculiar functions of national sovereignty." (*Eldredge* v. *Salt Lake Co.*, 37 Utah, 188 [106 Pac. 939]; *State* v. *Superior Court*, 75 Wash. 239 [Ann. Cas. 1915C, 425, 134 Pac. 916].)

In the Utah case just named it is, among other things, said: "It seems to us too obvious to require either argument or the citation of authorities that in naturalization proceedings the United States government exercises sovereign functions which exclusively belong to that government, and further that, in authorizing the state courts to act in such proceedings, the national government selects such courts and the clerks thereof as government agencies through whom said government is discharging one of its peculiar functions of national sovereignty. Whatever may have been the theory of some courts regarding the power of Congress to confer such authority upon the state courts in the past, the question is now settled that Congress has such power, and that state courts may constitutionally exercise the same when authorized by Congress to do so. Among other cases, we refer to the following: *Levin* v. *United States*, 128 Fed. 826 [63 C. C. A. 476]; *Robertson* v. *Baldwin*, 165 U. S. 275 [41 L. Ed. 715, 17 Sup. Ct. Rep. 326, see, also, Rose's U. S. Notes]; *State* v. *Libby*, 47 Wash. 481 [92 Pac. 350]. The question as to whether the state courts continue or cease to be state courts while acting in naturalization cases, while interesting, is not material. It is enough for the present to know that in so doing such courts are merely agencies of the national government."

In the Washington case it is said, quoting the syllabus: "Under the United States constitution, article I, section 8, giving Congress power to establish uniform rules of naturalization, and the act of Congress of June 29, 1906 (c. 3592, sec. 3, 34 Stat. 596 [6 Fed. Stats. Ann., 2d ed., p. 952; U. S. Comp. Stats. Supp. 1911, p. 529]), giving certain state courts jurisdiction of naturalization proceedings, the state courts, in exercising that jurisdiction, exercise it as a function of the national government, and the procedure is controlled by the laws enacted by Congress."

Again, it is said in that case: "Under the federal naturalization law, there is no right of appeal from the decision of the court hearing the application, and, therefore, the state appellate courts cannot entertain appeals from such hearings in the state courts."

The above cases were decided after the enactment of the act of Congress of 1906 and deal entirely therewith.

The appellant cites the case of *In re Naturalization of Bura,* 5 Ohio App. 334, which also was decided subsequently to the enactment of the naturalization act of 1906, and which supports the position taken herein by him. In that case the court brushes away the arguments and the reasoning leading to the conclusion arrived at in the Washington and Utah cases above referred to and emphatically holds, as indicated in the syllabus, that "the Congress of the United States having by apt legislation conferred upon certain state courts the power to admit aliens to citizenship and to administer the naturalization laws of the country, sharing with such courts the jurisdiction of the federal courts over that subject, the power may be exercised according to the laws of procedure governing the state courts, as an incident to the power conferred, including any right of review to which an aggrieved party may be entitled by state law; and this, although such right of review is withheld when naturalization laws are administered in the federal courts." But, with due deference to the Ohio court, we think that, upon a reasonable degree of reflection, it will readily be perceived that the decisions in the Washington and Utah cases are crystallized from the sounder reasoning.

The theory upon which Congress excluded the right of appeal in naturalization proceedings evidently is that, since the matter of the naturalization of aliens is one of grace and

not of right, it would be sufficient to submit the question whether an alien shall or shall not be admitted to the rights of citizenship of this country to the exclusive decision of the courts to which the duty of hearing such applications is intrusted, allowing such courts a wide discretion in the determination of the matter and disallowing any review of such decisions by the higher courts, except where an independent suit may be brought, as authorized by the law itself, to set aside or cancel any certificate of naturalization which has been procured by fraudulent means.

Finally, it is to be observed that, obviously, there could be no *uniformity* in the administration of the naturalization laws, as is clearly contemplated by the federal constitution respecting that subject, if from the judgment in the proceedings in one of the two forums to which the administration of the naturalization laws is assigned by the act of Congress of 1906 an appeal would lie, while in the other it would not. There is no conceivable reason why so unjust a discrimination should be imputed to the intention of Congress, nor why a construction should be given the act leading to such result. It is not for a moment to be supposed that Congress intended that neither aliens applying for naturalization in the state courts nor the government should be entitled in such proceedings to an appeal in the federal courts and allowed the same right in the state courts.

But it is unnecessary to pursue the discussion further. We are firmly of the opinion that it was not intended that a judgment in citizenship proceedings, whether in the state or the federal courts, should be subject to review by the courts of appeal.

Accordingly, the motion of the respondent to dismiss the purported appeal in this case will be, and the same is hereby, granted.

Burnett, J., and Finch, P. J., concurred.