## Clarke's Case.

Argued March 24, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*George A. Baldwin,* with him *Paul H. Baldwin,* of *Baldwin & Baldwin,* for appellant.—The qualification was proper: United States v. Schwimmer, 279 U. S. 644.

In no sense is the political-religious loyalty to God in conflict with the prescribed oath of allegiance, nor is it in any sense inconsistent therewith.

The applicant had a right to declare his particular religious faith, as a part of the oath of allegiance in order to make the oath binding upon his conscience.

*Raymond D. Evans,* with him *Louis E. Graham,* United States Attorney, and *Zeno Fritz,* Assistant United States Attorney, for appellee.—The applicant

for citizenship cannot demand the right to take an oath of allegiance different from the prescribed naturalization oath: United States v. Manzi, 276 U. S. 463; United States v. Ginsberg, 243 U. S. 472; Maney v. United States, 278 U. S. 17; United States v. Ness, 245 U. S. 319; Tutun v. United States, 270 U. S. 568; Schwimmer v. United States, 279 U. S. 644; Johnannessen v. United States, 225 U. S. 227; Ozawa v. United States, 260 U. S. 178.

The power to enact naturalization legislation is exclusively in Congress: Chirac v. Chirac, 2 Wheat. 259, 269; Ogden v. Saunders, 12 Wheat. 212, 275-6; Dred Scott v. Sandford, 19 Howard 393, 405.

While courts of record of a state have the power to naturalize, this must be done in conformity with the uniform laws promulgated by Congress; upon no other theory could the rule of uniformity be maintained: Holmgren v. United States, 217 U. S. 509; Rump v. Com., 30 Pa. 475.

Opinion by Mr. Justice Kephart, June 21, 1930:

Appellant petitioned the Common Pleas Court of Beaver County to be naturalized. Naturalization was refused because he wished to add to the required oath to support the Constitution and laws of the United States the words "so far as they are in accord with the moral law of Jesus Christ." He now appeals to this court.

The first question is the right of appeal. Proceedings for naturalization of foreigners have always been entertained in our state courts. It stands justified by the fact that it has had an almost undisputed growth since the formation of the Union; our "practice......is fully justified by positive law. The Statute, 13 Geo. 2, c. 7, [1740], followed by the Provincial Act of 3d February, 1743 [Hall & Sellers, 197], made the naturalization of foreigners a subject of judicial cognizance in our state courts": Rump v. Com., 30 Pa. 475, 477. This act was passed after the Royal Act for naturalizing foreign prot-

estants, and provided for naturalizing such people, not Quakers, who conscientiously refused to take an oath before the chief judge or other judge of the Supreme Court of this province; until the formation of the Union, undoubtedly an appeal in the nature of a certiorari would lie.

When the thirteen colonies were organized and the federal Constitution adopted, section 8 of article I, treating on naturalization, declared: "The Congress shall have power......to establish a uniform rule of naturalization."

"The Constitution has conferred on Congress the right to establish a uniform rule of naturalization, and this right is evidently exclusive, and has always been held by this court to be so. Consequently, no state, since the adoption of the Constitution, can, by naturalizing an alien, invest him with the rights and privileges secured to a citizen of a state under the federal government, although, so far as the state alone was concerned, he would undoubtedly be entitled to the rights of a citizen, clothed with all the rights and immunities which the Constitution and laws of the state attached to that character.

"It is very clear, therefore, that no state can, by any act or law of its own, passed since the adoption of the Constitution, introduce a new member into the political community created by the Constitution of the United States": Scott v. Sandford, 60 U. S. 393, 405. See also Boyd v. Nebraska, 143 U. S. 135, 139.

The first federal act passed under this power was that of March 26, 1790, c. 3; the last brought to our attention [Act of June 29, 1906, c. 3592, section 3, 34 Stat. 596, U. S. Code, Title 8, section 357] confers jurisdiction to naturalize aliens on the United States district courts and on "all courts of record in any state or territory having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited." An appeal lies from the district

court to the circuit court of appeals in such proceeding, it being a "case" within the meaning of the Court of Appeals Act: Tutun v. U. S., 270 U. S. 568. This case overruled U. S. v. Dolla, 177 Fed. 101, which held there was no right of appeal.

Naturalization is a judicial act: Spratt v. Spratt, 4 Peters 393, 406; Tutun v. U. S., supra. It is essentially so in its nature, for it is a cause to be heard and decided on evidence; it involves a question of legal right, and, although such cases arise under the Constitution and the laws of the United States, yet, because these are part of the law of the land, and merely give the rule for the exercise of our admitted state functions, our state courts may entertain this jurisdiction: Rump v. Com., supra. It may be quite true that the legislature of Pennsylvania might deem it expedient to forbid the courts to entertain petitions for naturalization, and it might even decide that the applicant had no right of appeal from the action of our courts of record mentioned in the act of Congress, but it has not done so.

While there is no direct ruling in this State that such a proceeding is the subject of an appeal, and it is suggested that the lower court is the court of last resort, from which under the federal acts an appeal lies direct to the United States Supreme Court, the reasoning of our cases is to the contrary. Rump v. Com. was followed by Schuylkill Co. v. Reese, 249 Pa. 281, where it was held that fees received in naturalization proceedings by the prothonotary awarded to him under the federal act are not his private property, but the property of the county. It was urged in that case that the fees were not paid to him for any *official acts,* as the State had imposed no duty on him, but it was pointed out that he did receive these fees for official services performed in connection with an official function. The clear import of the case is that the state court does not act solely as a federal agency, but exercises judicial functions. See also Macoluso's Naturalization, 237 Pa. 132. When

Congress designated our courts of record as the formal means through which naturalization may be procured, it contemplated all the incidents to which a court of record was subjected. Among the incidents of a court of record is the litigant's right of appeal in some form, unless it is specifically denied. Even then, where the question of jurisdiction of the subject-matter arises, it is within the right of review. See White Twp. School Dist., 300 Pa. 422.

As the proceedings are judicial, though of statutory origin, and there is no legislative prohibition against an appeal either before or since the federal Constitution, and since the right of appellate review is brought within the ordinary rules of our system of jurisprudence, under our general supervisory powers, we may, by certiorari, inspect the record of the court below: Twenty-first Senatorial District Nomination, 281 Pa. 273, 279. The extent of this review is laid down in Plains Twp. Election Returns, 280 Pa. 520, where the Act of April 18, 1919, P. L. 72, was under consideration. See Walker's App., 294 Pa. 385, 389. Since the legislation is silent on the right of appeal or the finality of the order, an appeal in the nature of certiorari is of right, and we may examine the record under the Act of 1919 in its broadest sense to determine the fundamental questions involved.

Before discussing the latter, it may be pointed out that in our sister states the right to an appeal in naturalization cases has been generally upheld: In re Fordiani, 98 Conn. 435, 120 Atl. 338; U. S. v. Hrasky, 240 Ill. 560, 88 N. E. 1031; Dean, Petitioner, 83 Me. 489, 22 Atl. 385; State v. District Court, 107 Minn. 444, 120 N. W. 898; Ex parte Johnson, 79 Miss. 637, 31 So. 208; U. S. v. Breen, 135 App. Div. 824, 120 N. Y. Supp. 304; State v. Judges of the Courts of Common Pleas, 58 N. J. L. 97, 32 Atl. 743; Vura's Naturalization, 5 Ohio App. 334. Relying upon the idea of federal agency, and the case of U. S. v. Dolla, supra, since overruled, there are a few courts which hold that there is no right of re-

view: In re Wilkie, 58 Cal. App. 22, 208 Pac. 144; State v. Superior Ct., 75 Wash. 239, 134 Pac. 916. The great weight of authority, however, is in favor of the right of an appeal.

Appellant argues that he has a right to accompany the oath prescribed under the laws of the United States with the statement noted above, since it is not a qualification of the oath; but the decision of United States v. Schwimmer, 279 U. S. 644, 49 Sup. Ct. 448, rules the case to the contrary. The Act of 1906 requires that before any one is admitted to citizenship, he shall declare on oath in open court that he will support and defend the Constitution and laws of the United States against all enemies, foreign and domestic, and bear true faith and allegiance to the same. The qualification, "so far as they are in accord with the moral law of Jesus Christ" would raise quite an independent thought. It carries with it the conviction that some of our laws are not in accord with the moral law of Jesus Christ, and these he will not support or defend. The difficulty with appellant's position is that he sets up his own conscience or will as the sole judge to determine what laws are not in accord with the moral law of Jesus Christ. We might point to laws contested with much vigor on this point.

It is for Congress alone to decide the form of the oath of allegiance, and when it does so in language as clear, explicit and unequivocal as that contained in the present oath, no court or judge can nor should permit any evasion of its terms. The oath is not one to be debated; its equivalent in other language is not a legitimate subject of discussion. It predicates a definite state of mind in those seeking admission. The naturalization clause is one of the most important provisions of the Constitution, as is the legislation thereunder. Judges, who accept into citizenship one who wishes to subtract from its declared requirements, or attempts to limit or modify its intent, open the door for further infractions and anarchy may stalk in unmolested. No sophistry of illu-

sionary reasoning can minimize the ordinary import of the oath. It would be much more in keeping with intellectual honesty to say openly that we do not regard Congress as capable of enacting rules, or hold that regardless of what is laid down we think the applicant should be admitted to citizenship. If one desiring citizenship, holding views contrary to those prescribed by Congress for membership in the United States, may, because of superior education, age, or mental reservation, become a citizen notwithstanding the rule, why have a rule at all? Admission would then depend on the inclination of the judge. It makes little difference what judges may think of the views of those seeking naturalization; Congress has pointed the way with unmistakable directness, and has declared that an applicant must agree under oath to support and defend the laws of the United States; it is for us to follow the law, not to legislate. The court below was clearly right in denying the applicant admission on the terms he wished to impose on the national government.

Judgment affirmed.