Schulz Naturalization Case.

Argued January 4, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO AND AR-NOLD, JJ.

*Fred T. Cadmus, III,* with him *C. Richard Morton* and *Cadmus & Morton,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE:

This appeal is from a denial by the Court of Common Pleas of Chester County of appellant's petition for naturalization. The question presented is whether the appellant applied for an exemption, and was relieved thereby, from service in the armed forces of the United States on the ground that he was an alien. The trial court ruled that he had and, therefore, was ineligible to become a United States citizen.

Appellant, a German national, has resided continuously in the United States since 1930. On March 2, 1942, appellant was examined by a Selective Service Local Board and, on the basis of War Department instructions excluding all enemy aliens from service, was placed in class 4-C, the class for unacceptable aliens. On August 12, 1942, petitioner furnished information from which an "Alien's Personal History and Statement" form (DSS 304) was completed. Section 41 of this form, allegedly signed by appellant, reads as follows: "41. I __do__ object to service in the land or naval
(do, do not)
forces of the United States.

"You are informed that if you are an enemy alien or subject of a country allied with the enemy, you will not ordinarily be acceptable for service in the land or naval

forces of the United States if you indicate in Item 41 above that you object to such service. If you are a citizen or subject of any other country, you may indicate in Item 41 whether you do or do not object to service in the land or naval forces of the United States but such objection may be disregarded. If you are a citizen or subject of a neutral country, and you do not wish to serve in the land or naval forces of the United States, you may apply to your local board for Application by Alien for Relief from Military Service (Form 301) which, when executed by you and filed with the local board, will relieve you from the obligation to serve in the land or naval forces of the United States, but will also debar you from thereafter becoming a citizen of the United States."

On the basis of this statement, appellant's 4-C classification was continued. In 1944, appellant's case was reviewed by the Selective Service Board. It was reported by the Board's interviewer that appellant was unwilling to enter the United States Army. No forms were signed by appellant at this time and the 4-C classification was continued. At no time did appellant complete an "Application of Alien for Relief from Training and Service in the Armed Forces". It is doubtful whether or not he would have been permitted to do so had he wished. Cf. *Petition of Zumsteg*, 122 F. Supp. 670, 672.

In 1953, appellant filed a petition for naturalization. A hearing was held before an examiner who recommended that the petition be denied. The examiner concluded that petitioner was ineligible for citizenship by virtue of Section 315 of the Immigration and Nationality Act of 1952, 66 Stat. 242, 8 U.S.C.A. 1426, which provides: "(a) Notwithstanding the provisions of section 405 (b) of this Act, any alien who applies or has applied for exemption or discharge from training

or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States. (b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

Following a trial, at which testimony was produced by both sides, but before disposition of the matter, the examiner withdrew the unfavorable recommendation and substituted a favorable recommendation. This was caused by the conclusion of the Commissioner of Immigration and Naturalization that the phrase "I do object to service in the land or naval forces of the United States" by an enemy alien, *did not constitute an application for exemption* within the meaning of Section 315 of the Act. Notwithstanding the favorable recommendation, the trial court concluded: ". . . that petitioner did apply for exemption from service . . . on the ground that he was an alien, and was relieved from such service on such ground and that therefore he is ineligible to become a citizen."

The Federal Constitution, Article I, section 8, clause 4, provides that: "The Congress shall have power . . . to establish a uniform rule of naturalization. . .". Section 310 of the Immigration and Nationality Act of 1952, 66 Stat. 239, 8 U.S.C.A. 1421, confers upon specified Federal courts *and all courts of record of the States and Territories,* the jurisdiction to naturalize persons as citizens of the United States. ". . . All [Federal and State courts] are, for the purposes of the naturalization acts, federal courts, . . . one set of courts is not foreign to the other. . .".: *United States v. Aaker-*

*vik,* 180 Fed. 137, 141. State courts, therefore, must apply the Federal law. The *Federal acts* on naturalization are to be uniformally enforced in view of the express requirement that the rule of naturalization shall be uniform: *In re Tomarchio,* 269 Fed. 400; *In re Martinez,* 73 F. Supp. 101. In *Clarke's Case,* 301 Pa. 321, 152 A. 92, this Court stated (p. 325) : ". . . such cases arise under the Constitution and the laws of the United States. . .". However, ". . . . the state court does not act solely as a federal agency, but exercises judicial functions. . .". (p. 325) Thus the courts of common pleas of this state have jurisdiction to naturalize and while they can exercise independent discretion, such jurisdiction should be exercised in conformity with Federal law.

We also held in *Clarke's Case,* supra, that where a court of record of this state refuses an application for naturalization, an appeal in the nature of a certiorari is of right. This Court will examine the record in its broadest sense to determine the fundamental questions involved and, in so deciding, apply Federal law.

The District Court, Southern District of New York, in the *Petition of Zumsteg,* 122 F. Supp. 670, had before it the precise question here presented: Whether an affirmative answer to Question 41 in the "Alien's Personal History and Statement" is equivalent to an application for exemption from military service. That court held that it did not, stating (p. 672) : ". . . The use of the words 'application * * in the manner prescribed by and in accordance with rules and regulations prescribed by the President' would appear to require that the applicant take a more affirmative step than merely giving an answer to one of the questions on a questionnaire relating to an alien's personal history, such as Form DSS 304. This is particularly so since neither the Act not (sic) the Selective Service Regula-

tions permitted an 'application' to be made by an enemy alien, and, so far as the Selective Service Regulations were concerned, an affirmative answer to Question 41 on Form 304 would not necessarily relieve the applicant from military service."

This decision, though not controlling in this appeal, is persuasive. Its conclusion is further buttressed by the decision of the Immigration and Naturalization Service to withdraw its objection to petitioner's naturalization on the ground ". . . that further evidence would be required to show that an affirmative application was made."

For these reasons, we reverse the order of the court below. The record is remanded to the court below to enter an order in accordance with this opinion.

———

PER CURIAM, March 13, 1956:

The foregoing opinion was prepared by the late Justice ALLEN M. STEARNE before his death on February 28, 1956. It is now adopted and filed as the opinion of the Court.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

In August, 1942, when this country was at war with Nazi Germany, when American soldiers and sailors were being killed on land and sea, when Nazi airplanes were bombing helpless civilian populations of countries allied with America, when Nazi submarines were sinking ships bearing the flag of the United States, when, in short, the very existence of the United States was being threatened and the entire nation was on a war footing, Franz Albert Schulz, the petitioner in this case, being of draft age, walked into the office of the Selective

Service Local Board in Paoli, Chester County, and declared: "I do object to service in the land or naval forces of the United States."

The privilege to refuse military service was one which this generous and noble nation afforded to any one who was a citizen of an enemy country, but it was a privilege not lightly acquired or indifferently proffered. By choosing to refrain from aiding the United States during war, the petitioner Schulz chose also to forfeit any claim he might have to citizenship in the country which he willingly disavowed in her hour of greatest need. Section 315 of the Immigration and Nationalization Act, 66 Stat. 242, provides: "(a) Notwithstanding the provisions of section 405 (b) of this Act, *any alien who applies* or has applied *for exemption* or discharge *from* training or *service in the Armed Forces* or in the National Security Training Corps *of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States."* *

Schulz came to America in 1932 and, with the exception of two trips back to Germany in 1935 and 1936, has remained here ever since. When war broke out with Nazi Germany in 1941, he had already been a resident here for eleven years but he had made no application for American citizenship. The citizenship which he desires today was no less worthy in 1942 when he was given the opportunity with millions of other Americans to uphold the democratic institutions of this country by shouldering a rifle in her defense. There were legions of young men of Germanic origin or derivation who saw no Teutonic ideal in the program and policies of the tyrannical Nazi regime, and who were

---

* All italics mine.

willing and eager to join with Americans of every na-
tional origin to defeat Hitler and thus bring Germany
back into the sisterhood of God-fearing, international-
law-abiding nations.

Schulz affected to see in American military service
an inevitable warring upon his own family. He said in
a letter he wrote to the Local Selective Service Board
on August 17, 1942 that "it would be hard for me to
go against my own kin." However, in December, 1943,
local boards were directed to notify all enemy aliens
that they could, by withdrawing their previous objec-
tions to military service, ask for assignment to a theatre
of war where they would not be required to fight
against fellow-nationals or blood relatives. This al-
ternative did not interest Schulz because, it soon be-
came apparent, it was not fighting against his own kin
which disturbed him—he spurned serving in the United
States forces anywhere. In February, 1944, after ques-
tioning Schulz on this whole matter of military service,
the Chairman of the Selective Service Board wrote to
the Legal Advisor at State headquarters in Harrisburg
that "it was his opinion and conviction that he [Schulz]
did not want to enter the Army under any circum-
stances," and added that Schulz "seemed unwilling to
enter the United States Army for service *even in con-
tinental United States.*"

With this history of the case before us, it would
seem as obvious as an unsheathed bayonet that Schulz
did, in every sense of the word, apply for exemption
from military service, that the exemption was granted
and that, therefore, under Section 315 of the Naturali-
zation Act he made himself ineligible for United States
citizenship.

The Majority of this Court, however, is of the opin-
ion that Schulz did not disqualify himself for citizen-
ship. When Schulz first reported to the Local Selec-

tive Service Board he completed a questionnaire, known as D. S. S. Form 304, in which he stated, as already indicated, "I do object to service in the land or naval forces of the United States." The Majority says that this statement does not show that he applied for exemption from military service.

The Majority endeavors to support its position by asserting that Schulz never executed, during the war, a formal "Application for Relief from Training and Service in the Armed Forces." But this conclusion of the Majority plants a dead tree in the forest of argumentation: There is nothing in the Selective Service Act which says that the relief from military service must be applied for on any particular form or in any designated phraseology. The Naturalization Examiner, who conducted the preliminary examination on Schulz's petition for naturalization, reported to the Court of Common Pleas that Schulz did, in fact, "apply for relief from training and service in the armed forces": "It is submitted in the opinion of this Service, that an alien enemy who on D.S.S. Form 304 expressed his objection to service in the Armed Forces and who by reason thereof was found 'not acceptable' by the Armed Forces, thereby being deferred from training and service, is to be regarded as *one who applied for and was granted exemption on the ground of alienage and is therefore ineligible to become a citizen by virtue of the provisions of Section 315.*

"Under the regulations of the Selective Service System and under the policy of the War Department, an alien of enemy nationality who did object was thereby, as a matter of policy, relieved from service in the Armed Forces."

Thus, no matter what printed form was used, the fact is as historically established as Hitler's defeat, that Schulz, because of representations made by him-

self, was *relieved from service in the Armed Forces*. It is also incontrovertible that despite his excuses that he objected to military service because he was reluctant to fight his own kin, Schulz did in fact refuse military service, as reported by the Naturalization Examiner, "in a non-German theatre of war or as a non-combatant." The verities in this whole case are, and the record vividly demonstrates them, that Schulz found it convenient to use his enemy alienage as a parachute of safety from the dangers of war. No one particularly enjoys the prospect of going to war with the potential prospect of returning to civilian life maimed and crippled or not returning at all, but men of honor and of devotion to truth and justice place the fate and destiny of the nation above individual convenience or desire. It does not seem fair, in the universal appraisement of what is just, to those who did their grim duty in the gory and muddy foxholes, in the harrowing holds of battered and sinking ships, and in the sulphur-charged clouds of embattled aircraft, to give to unhelping enemy aliens the same honorable reward which was purchased by patriots at the expenditure of sweet blood and salty tears. It is for that reason that Congress solemnly declared that "any alien who applied or has applied for exemption or discharge from . . . service in the Armed Forces . . . and is or was relieved . . . from such . . . service on such ground, shall be permanently ineligible to become a citizen of the United States." If there is to be any modification of this rule, it is for Congress to make the modification, not the Courts. In the confused, half-starved, disordered and even perilous state of the outside world today, American citizenship has become perhaps the most treasured possession on either hemisphere. It should not be casually conferred, as indeed it should not be casually taken away.

568

It is true that the Commissioner of Immigration and Naturalization has withdrawn the unfavorable recommendation made by the Examiner, but we are not bound by the Commissioner's conclusions. We will accept the facts found by the Immigration and Naturalization Service, but the interpretation of the law is to be left to this Court. And in that respect I do not understand why the Majority of this Court goes along with the Immigration Service in straining at the gnat of the phrase *applying for exemption from military service* and swallowing whole the camel of the petitioner's statement that *he objected to military service*.

What is the difference between "applying for exemption from military service" and "objecting to military service"? It is the difference between a white horse with black stripes and a black horse with white stripes.

I dissent.

Mr. Justice BELL joins in this dissent.