(No. 20347.—

SAM JACOBSON, Plaintiff in Error, *vs.* THE UNITED STATES OF AMERICA, Defendant in Error.

*Opinion filed April 23, 1931.*

JACOB LEGION TENNY, (GEORGE W. SPRENGER, of counsel,) for plaintiff in error.

GEORGE E. Q. JOHNSON, United States Attorney, and JOSEPH A. STRUETT, (FRED J. SCHLOTFELDT, of counsel,) for defendant in error.

Mr. Justice DeYoung delivered the opinion of the court:

Sam Jacobson filed a petition in the superior court of Cook county for his admission to citizenship. A hearing upon the petition resulted in its dismissal and Jacobson prosecutes this writ of error for a review of the record.

On February 24, 1926, Jacobson, the plaintiff in error, under the name of Samuel Sangull, filed in the office of the clerk of the circuit court of Cook county his declaration of intention to become a citizen of the United States. Subsequently, on September 18, 1928, he filed in the District Court of the United States for the Northern District of Illinois, a petition seeking his admission to citizenship. An officer designated by authority of the act of Congress of June 8, 1926, reported to the court that, at a preliminary hearing, he had examined the petitioner and his witnesses under oath and found that the good character of the petitioner had not been proved, and he accordingly recommended that the petition be denied. Upon consideration of the petition, the finding and the recommendation, at a final hearing in open court, on June 5, 1929, the district court denied the petition. Thereafter, on November 19, 1929, the present petition was filed in the superior court of Cook county. During the hearing upon that petition, proof of the proceeding in and its disposition by the Federal district court was made, and the dismissal of the later petition by the superior court followed.

The only question to be determined is whether the order of the Federal court denying the first petition of the plaintiff in error precluded consideration of the second petition by the superior court of Cook county. The act entitled "An act to establish a bureau of immigration and naturalization and to provide for a uniform rule for the naturalization of aliens throughout the United States," (34 U. S. Stat. at Large, part 1, pp. 596 to 607) sets forth the requirements for admission to citizenship in the United States.

Section 3 of the act enumerates the courts upon which exclusive jurisdiction to naturalize aliens as citizens of the United States is conferred. Among these are the Federal district courts and all courts of record in any State having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited. The fourth section, among other things, prescribes the requirements of a petition for naturalization. Subdivision 4 of the same section provides that: "It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the State or Territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same. In addition to the oath of the applicant, the testimony of at least two witnesses, citizens of the United States, as to the facts of residence, moral character, and attachment to the principles of the constitution shall be required, and the name, place of residence, and occupation of each witness shall be set forth in the record." Section 9 of the act provides that every final hearing upon a petition for naturalization shall be held in open court before a judge or judges thereof, and that upon such hearing the applicant and witnesses shall be examined under oath before and in the presence of the court.

When the Department of Labor was created by the act approved March 4, 1913, (37 U. S. Stat. at Large, part 1, pp. 736 to 738), the bureau of immigration and naturalization was transferred to and thenceforth placed under the jurisdiction and supervision of, that department, and the bureau was divided into two bureaus to be known thereafter as the bureau of immigration and the bureau of naturalization. By the act approved June 8, 1926, (44 U. S. Stat.

at Large, part 2, pp. 709, 710), section 4 of the Naturalization act was amended by the addition of the following subdivision: "Fourteenth: (a) The judge of any United States district court, or the senior judge of said court if there are more judges than one, is hereby authorized, in his discretion, to designate one or more examiners or officers of the bureau of naturalization (including the naturalization service) serving as such examiner or officer within the territorial jurisdiction of such court, to conduct preliminary hearings upon petitions for naturalization to such court, and to make findings and recommendations thereon. For such purposes any such designated examiner or officer is hereby authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any petitioner for naturalization, to subpœna witnesses, and to administer oaths, including the oath of the petitioner to his petition and the oath of his witnesses. (b) The findings of any such designated examiner or officer upon any such preliminary hearing shall be submitted to the court at the final hearing upon the petition required by section 9, with a recommendation that the petition be granted or denied or continued, with the reasons therefor * * *. The judge to whom such findings and recommendations are submitted shall by written order approve such recommendations with such exceptions as he may deem proper, by subscribing his name to each such list when corrected to conform to his conclusions upon such recommendations. (c) The provisions of section 9 requiring the examination of the petitioner and witnesses under oath before the court and in the presence of the court shall not apply in any case where a designated examiner or officer has conducted the preliminary hearing authorized by this subdivision; except that the court may, in its discretion, and shall, upon demand of the petitioner, require the examination of the petitioner and the witnesses under oath before the court and in the presence of the court."

A law prescribing a uniform rule for the naturalization of aliens has been in effect since the year 1790. (1 U. S. Stat. at Large, pp. 103, 104). Naturalization proceedings in courts of competent jurisdiction are judicial and not administrative in character. (*Tutun* v. *United States,* 270 U. S. 568; *Spratt* v. *Spratt,* 29 id. 393; *In re Stasinopulos,* 21 Fed. Rep. 2d ser. p. 71; *In re Hartman,* 232 Fed. Rep. 797). The burden is upon an alien applicant to establish that he is a person of good moral character, qualified to be admitted as a citizen of the United States. (*United States* v. *Schwimmer,* 279 U. S. 644; *United States* v. *Gerstein,* 284 Ill. 174). It was incumbent upon the plaintiff in error, on the preliminary hearing before the designated examiner, to show, among other things, that he had behaved as a man of good moral character for the prescribed period. (*Gaglione* v. *United States,* 35 Fed. Rep. 2d ser. p. 496). Upon demand of the plaintiff in error, he and his witnesses would have been examined before the court, but he did not avail himself of that right. An order of a Federal district court granting or denying a petition for naturalization is a final decision within the meaning of the Judicial Code of the United States. (*Tutun* v. *United States, supra*). The parties to the two proceedings instituted by the plaintiff in error, the first in the United States district court and the second in the superior court of Cook county, were the same. The questions presented to the superior court were the questions which theretofore had been presented to and decided by the district court. Where the petition of an alien for admission to citizenship has been denied after a hearing on the merits because of his failure to prove that he behaved as a man of good moral character during the five years preceding his application, he cannot maintain a second petition until the lapse of a like period from the time the order denying his first application was entered. (*In re Norman,* 256 Fed. Rep. 543; *In re Centi,* 217 id. 833; *In re Talarico,* 197 id. 1019; *In re Guliano,* 156 id. 420; *In re Stasinopu-*

*los, supra; In re Hartman, supra*). The plaintiff in error filed his petition in the superior court within six months after the United States district court had denied his prior application for the same purpose. The later petition was therefore prematurely filed and its dismissal necessarily followed.

The order of the superior court is affirmed.

*Order affirmed.*